BASTON, A MINOR, APPELLEE, *v.* SEARS, APPELLANT.

[Cite as Baston v. Sears, 15 Ohio St. 2d 166.]

(No. 41259—Decided July 10, 1968.)

*Mr. Vernon Stiver*, for appellee.
*Mr. Albert Wettstein*, for appellant.

Brown, J. It is clear that the marriage of the appellee's mother prevented her use of the bastardy statutes to compel the father to support the appellee. Section 3111.01, Revised Code; *Beam* v. *Ray*, 111 Ohio App. 341. Nothing in Chapter 3111, Revised Code, gives an illegitimate child a substantive right to support independent of the rights of the mother. If the appellee has any enforceable right to support, it must come from somewhere other than Chapter 3111, Revised Code.

There is no common-law right for an illegitimate child to receive support from its father. 10 Corpus Juris Secundum 86, Bastards, Section 18C; 10 American Jurisprudence 2d 895, Bastards, Section 68. Any right of support must, therefore, stem from statutes. We find no statute which grants such a right, nor has such a statute been called to our attention.

Certainly, the fact that this action is brought under the declaratory judgment statutes does not serve to support the right claimed, since it is well recognized that declaratory judgment statutes do not establish substantive rights. 1 Anderson, Actions for Declaratory Judgments, 2 Ed., Section 246.

Section 2151.42, Revised Code, makes it a criminal offense for the father of an illegitimate child to fail to support such child, and Section 2151.99, Revised Code, provides penalties which may be enforced *by the state*, but those sections give no concomitant civil remedy which is enforceable by the child. It is recognized that enforcement of legal liability for the support of illegitimate children can be undertaken *only* in the manner specified by law. *Baugh* v. *Maddox*, 266 Ala. 175, 95 So. 2d 268; 10 Corpus Juris Secundum 92, Bastards, Section 20A. Since Section 2151.42, Revised Code, makes no provision for a civil action and gives no substantive right of enforcement of support to the illegitimate child, the action of the Court of Appeals in this case must be considered legislative, and therefore invalid.

This holding is buttressed by the fact that no such action existed historically and that no state court decision which we have found, or which has been called to our atten-

tion, gives such a right in the absence of a statute. *James v. Hutton* (Mo. App.), 373 S. W. 2d 167. Compare Section 196a of the California Civil Code, wherein express provision is made for a civil action.

This leaves only the appellee's argument that the different legal treatment of legitimate children and illegitimate children violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. The reasoning behind this assertion is not given. Appellee merely cites a law review article, entitled "Equal Protection for the Illegitimate," by Professor Harry D. Krause, 65 Michigan L. Rev. 477.*

Professor Krause's argument there is that since legitimate and illegitimate offspring are similarly situated as to their *need* for support they must be equally treated.

Krause complains that in many cases only the state and the mother are responsible for the support of an illegitimate child, while there is available to the legitimate child an additional source, the father. The argument is that this results in an unequal treatment caused by state action. The state action complained of, however, can be only the recognition, by the state, of the nature of the voluntary contract which is undertaken when marriage occurs. That contract includes, by way of well understood tradition and custom, the promise by the husband to support children which may result from this relationship which is favored by the law and public policy. Professor Krause's argument, then, is that the favored position and consequences which result from marriage are to be disregarded or that the illegitimate child is to be given a right to pursue an alleged father who has not consented to be bound.

If such a dramatic change in social pattern is to be espoused, it should be done by the General Assembly after due deliberation and debate, and operate prospectively.

---

*Levy* v. *Louisiana*,    U. S.    , 20 L. Ed. 2d 436, 88 S. Ct. 1509, had not been decided at the time appellee presented his case in this court, but we believe that it is inapplicable. The rights announced in *Levy* were based on the intimate, familial relationship which exists between a mother and her child, whether the child is legitimate or illegitimate.

Inasmuch as the appellee has no legal right upon which to base his action for a declaratory judgment, it follows that the demurrer was properly sustained, and that the Court of Appeals erred in reversing the judgment of the Court of Common Pleas.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN and MATTHIAS, JJ., concur.
O'NEILL, HERBERT and SCHNEIDER, JJ., dissent.

O'NEILL, J., dissenting. I can not agree with the result reached by the majority in this case.

That result is reached, in my opinion, by approving an *unconstitutional discrimination against innocent children* who, through no fault of their own, are born out of wedlock. An unintended result is the discrimination against *fathers* of legitimate children. Relying upon this decision, thousands of *fathers* will escape from their responsibility and duty to support their children. The burden of supporting these children will then fall upon the taxpayers who are required to support the public welfare programs, or upon the members of society who support private charity, instead of upon the fathers of these children where it properly belongs.

The majority opinion holds that a *child* has no right of action against his father for support where that father does not marry the child's mother and the mother marries another man after the child's birth. Her husband, in such circumstances, is not required to support the child because he is not the *father*.

The majority holds that the Ohio law does not give to children born out of wedlock the same right to support from their *father* that children born in wedlock are assured by Section 3103.03, Revised Code. That section provides in part:

"The husband must support * * * his minor children out of his property or by his labor.*

---

*See also Sections 3113.01 and 2151.42, Revised Code, with regard to criminal offenses.

That language gives to a legitimate child the right to support from his *father* but apparently the law has been interpreted by the majority to deny to an illegitimate child that same right to support from his *father*.

Such an interpretation of the laws, in my opinion, is unconstitutional because it denies the illegitimate child equal protection of the laws guaranteed "persons" by the Fourteenth Amendment to the United States Constitution, which provides that "no state" shall "deny to any *person* within its jurisdiction the equal protection of the laws." (Emphasis added.)

The United States Supreme Court, in a decision announced May 20, 1968, *Levy* v. *Louisiana*, 88 S. Ct. 1509, held that the equal protection clause precluded the state of Louisiana from making a classification of children based upon legitimacy, which allowed legitimate children to recover in a wrongful death action for the loss of their mother, but denied the same right to illegitimate children. The United States Supreme Court said:

"We start from the premise that illegitimate children are not 'nonpersons.' They are humans, live and have their being. They are clearly 'persons' within the meaning of the equal protection clause of the Fourteenth Amendment.

"While a state has broad power when it comes to making classifications (*Ferguson* v. *Skrupa*, 372 U. S. 726, 732), it may not draw a line which constitutes an invidious discrimination against a particular class. See *Skinner* v. *State of Oklahoma*, 316 U. S. 535, 541-542. Though the test has been variously stated, the end result is whether the line drawn is a rational one. See *Morey* v. *Doud*, 354 U. S. 457, 465-466. * * *

"* * * Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?

"* * *

"We conclude that it is invidious to discriminate against them * * *."

HERBERT and SCHNEIDER, JJ., concur in the foregoing dissenting opinion.