**Lyle E. STRAHAN**

v.

**William L. STRAHAN and Martha H. Strahan.**

**Civ. A. No. 14120.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 22, 1969.

J. Stanley Wagner, Robert G. Hebert, New Orleans, La., for plaintiff.

Berry & Lee, Winnsboro, La., A. Leon Hebert, and David Donnell Moss, Hebert, Moss & Graphia, Baton Rouge, La., for defendants.

## OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENJAMIN C. DAWKINS, Jr., Chief Judge.

The issue in this diversity case is whether the laws of Louisiana violate the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution by denying the right of inheritance to an illegitimate child of a decedent, as against his legitimate heirs. Defendants moved for summary judgment.

Plaintiff, the alleged illegitimate son of the intestate whose property is the object of this suit, asserts that the rationale of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and Glona v. American Guarantee Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), should apply to Louisiana succession laws. Those cases held that "children," as used in Louisiana Civil Code, art. 2315,[1] (without further categorization,) included illegitimate children, reasoning that a child should not be "denied rights merely because of his birth out of wedlock."

We do not think those decisions have such a far-reaching effect.[2] In the first place, the statutes in *Levy* and *Glona* created rights which never existed before their enactment. See dissent in *Glona*, 391 U.S. 76, 88 S.Ct. 1515 (1968). Without that law, no person—parent, collateral, or child (legitimate or illegitimate)—could recover for the wrongful death or suffering of another. Only through legislative grace are such actions maintainable. Conversely, laws regulating the orderly transmission of a decedent's property are founded on the most ancient legal principles.[3] For centuries they have been the basis for establishment of clearly definitive disposition of estates from generation to generation.

---

1. This statute allows certain surviving relatives to recover for wrongful death and suffering of a decedent.

2. This Court is cognizant of the North Dakota Supreme Court opinion of In Re Estate of Jensen, 162 N.W.2d 861 (1968), and the possibility that other State Courts may have made similar decisions, holding that *Levy* requires that a State may not prevent an illegitimate child from sharing in the succession of his parents when there are legitimate children in the family. We also notice that New York and California have recently changed their laws of inheritance to put illegitimates and legitimates in the same category insofar as succession laws are concerned. See California Probate Code, § 257 (West, 1956), and McKinney's Consolidated Laws, c. 17–b, § 4–1.2 (McKinney, 1967).

3. 33 Tulane Law Rev. 43 (1958), and authorities cited therein.

■ It is axiomatic that "* * * the settlement and distribution of decedents' estates and the right to succeed to the ownership of realty and personalty are peculiarly matters of state law." Harris v. Zion's Savings Bank & Trust Co., 317 U.S. 447, 450, 63 S.Ct. 354, 357, 87 L.Ed. 390 (1943). As such, the States are free to establish their own regulations and their only guideline is not arbitrarily or unreasonably to discriminate in enacting their applicable laws.

> "Differences and distinctions in a state's treatment of persons are frequently claimed to be discriminatory in violation of the Equal Protection and Privileges and Immunity Clauses of the Fourteenth Amendment. But such differences and distinctions, even when applied to persons clearly protected by the Fourteenth Amendment, are not in themselves unconstitutional. It is only when the variations are arbitrary and without reasonable legal basis that an unconstitutional discrimination occurs. A long line of decisions has molded this judicial concept." United States v. Burnison, 339 U.S. 87, 91, 70 S.Ct. 503, 508, 94 L.Ed. 675 (1950).

■ The distinction between legitimate and illegitimate children in the succession laws of Louisiana is not arbitrary or without reasonable legal basis. Louisiana has a paramount interest in encouraging the institution of marriage and discouraging the birth of illegitimate children. That it chooses to use its inheritance laws as one of its methods in that effort clearly is within its constitutional province. In providing for the welfare of its illegitimate children, Louisiana has distinguished between those illegitimates who may be acknowledged by their parents ("natural children"), and thus enjoy the possibility of sharing in succession property, and those whose rights include only a mere alimony,[4] (unacknowledged illegiti-

mates). Neither do these distinctions constitute invidious discrimination.

Since the Legislature of a State may "* * * limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction," Irving Trust Company v. Day, 314 U.S. 556, 562, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1941); United States v. Burnison, *supra*, Louisiana *could* permissibly enact a law providing that a testator could leave no more than $10.00 to an illegitimate child. Such a law clearly would be within the State's power. Likewise, Louisiana may and does provide that an illegitimate child cannot inherit as against legitimate heirs from his intestate parents, or inherit under certain conditions only, and this does not do violence to the Fourteenth Amendment.

Conceding for purposes of argument *only* and for no other reason, that the illegitimate child should share in Louisiana successions, the State has an even more powerful overriding and paramount reason for denying this right. We refer to the State's indisputable vital interest in the stability of its land titles.

> "As it is indisputable that the general welfare of society is involved in the security of the titles to real estate and in the public registry of such titles, it is obvious that the power to legislate as to such subjects inheres in the very nature of government. * * *
>
> * * * * * *
>
> " 'It [the state] has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subject to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. * * * The well-being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it. The duty of

---

4. La.Civil Code, arts. 918–920.

accomplishing this is local in its nature; it is not a matter of national concern or vested in the general government; it remains with the state; and as this duty is one of the state, the manner of discharging it must be determined by the state, and no proceeding which it provides can be declared invalid, unless it conflict with some special inhibitions of the Constitution, or against natural justice.'

"* * * Undisclosed and unknown claimants are, to say the least, as dangerous to the stability of titles as other classes. This principle received recognition and was applied in Hamilton v. Brown, 161 U.S. 256, 16 S.Ct. 585, 40 L.Ed. 691, where it was held to be competent for a state to make provision for promptly ascertaining, by appropriate judicial proceedings, who has succeeded to property upon the death of a person leaving such property within the state. * * *.

   *     *     *     *     *     *

" '* * * The power of the state as to titles should not be limited to settling them as against persons named. In order to exercise this power to its fullest extent, it is necessary that it should be made to operate on all interests, known and unknown. * * *'" American Land Company v. Zeiss, 219 U.S. 47, 60, 31 S.Ct. 200, 204, 55 L. Ed.2d 82 (1910).

Because of this dominant and legitimate interest, "[t]he power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated. * * * The title and modes of disposition of real property within the State, whether *inter vivos* or testamentary, are not matters placed under the control of Federal authority. * * *'" United States v. Fox, 94 U.S. 315, 320, 24 L.Ed. 192 (1876); United States v. Burnison, *supra*; and Richardson v. McDonald, 139 La. 651, 71 So. 934 (1916).

This is as it should be since "[c]oncepts of real property are deeply rooted in State traditions, customs, habits, and laws." Reconstruction Finance Corporation v. Beaver County, 328 U.S. 204, 210, 66 S.Ct. 992, 995, 90 L.Ed. 1172 (1946).

There simply must be a method for prompt and final definitive determination of valid ownership of real property left by a decedent. Louisiana feels that the proper way to insure this is to know who the claimants to a decedent's property are and to recognize the legally instituted claimants as owners shortly after a succession is opened. To hold that an illegitimate child may one day—perhaps many years later—come along and assert an interest in adjudicated property would devastate the orderly transmission of immovable property. "All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if this principle be overturned." Fletcher v. Peck, 10 U.S. 87, 6 Cranch. 87, 133, 3 L.Ed. 162 (1810).

> "It is settled in Louisiana that a prospective purchaser cannot be made to accept a title that is suggestive of future litigation. The test is not whether the outstanding claim is well founded, but whether the claim presents a possibility of future serious litigation." Kinler v. Griffen, 251 F.2d 655, 658 (5th Cir. 1958).

If plaintiff were to prevail here, this possibility often could present itself, and its devastating effects upon commercial land transactions cannot be overemphasized.

Louisiana's laws on inheritance were not conceived abruptly or discriminatorily, but are the product of the deepest

legal thought, tempered by experience and practicality. The redactors saw fit to distinguish among the various survivors of a decedent insofar as their right to inherit property were concerned. That they deemed it proper to favor a descendant over an ascendant, an ascendant over a collateral, or a legitimate over an illegitimate was within their constitutional authority. Such distinctions are not violative of any Federal Constitutional rights.

Moreover, while confecting the portion of the Louisiana Civil Code on successions, the writers clearly also had in mind the property laws of the State found in that same basic legal work.[5] The interrelationship of the various sections of the Civil Code enables commercial land transactions to proceed on an orderly and legally ascertainable basis. Had the lawmakers permitted illegitimate children to share in a decedent's succession, no title to property would ever be secure and certain. The catastrophic effects of such a law upon all land titles may not be emphasized too strongly.

For the foregoing reasons, defendants' motion for summary judgment is granted.

---

5. See Book 2, Louisiana Civil Code.