**JERRY VOGEL MUSIC CO., Inc.,**
**Plaintiff-Appellant,**

v.

**EDWARD B. MARKS MUSIC CORPO-**
**RATION, Defendant-Appellee.**

**No. 53, Docket 33321.**

United States Court of Appeals
Second Circuit.

Submitted Oct. 1, 1969.

Decided Nov. 24, 1969.

Leo E. Falkin, New York City (Seligson & Falkin, New York City, of counsel), for plaintiff-appellant.

Arthur E. Garmaize, New York City, for defendant-appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Nearly fifty years ago Overstreet composed the music, Henderson made an arrangement, and Higgins wrote the words for a song which was published and duly copyrighted in 1923. Higgins married Ida Stern on November 24, 1924, and died on April 19, 1937. In the late 1940's Mrs. Higgins, Henderson and Overstreet's next of kin assigned their interests in the renewal rights to the defendant, which received a renewal certificate on October 12, 1950.

The problem arises from the fact that on December 6, 1931, Higgins had an illegitimate daughter, Mary Ann Booker, who survived him. The defendant did not know of her existence until 1960, when plaintiff served notice of an assignment of the copyright renewal rights it had obtained from her in 1958 for $500.

Section 24 of the Copyright Act, so far as here material, vests renewal rights in "the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living * * *." Construing this characteristically obscure language, the Supreme Court held in DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956), "that, on the death of the author, the widow and children of the author succeed to the right of renewal as a class, and are each entitled to share in the renewal term of the copyright." DeSylva also required decision "whether an illegitimate child is included within

the term 'children' as used in § 24." The majority held that, in answering that question, it was proper to "draw on the ready-made body of state law," 351 U.S. at 580–581, 76 S.Ct. at 980, in that instance California's, and, more particularly, on the portion of state law that would determine "whether the child would be an heir of the author," 351 U.S. at 581–582, 76 S.Ct. at 981; they found that the illegitimate child had been acknowledged by the father and therefore qualified. It is agreed that New York's would be the relevant law here. The New York law applicable to Higgins' estate denied an illegitimate child the right to inherit from a father and gave only a limited right of inheritance from the mother. N.Y.Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 83(14).[1]

The title of the song—"There'll Be Some Changes Made"—proved prophetic when, on May 20, 1968, the Supreme Court held that a state statute construed to prevent illegitimate children from suing for the wrongful death of their mother was a denial of the equal protection of the laws. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. See also Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968) (denial to mother of right to sue for death of illegitimate son also violative of equal protection clause). Plaintiff says these decisions make unacceptable the result that DeSylva v. Ballentine would otherwise dictate. It leaves to us whether the solution is to overrule DeSylva and hold with the minority in that case that the mean-ing of "children" in § 24 of the Copyright Act should be determined by federal principles, which are considered to require recognition of the illegitimate child of a father, a task somewhat beyond our powers;[2] to follow DeSylva and declare § 24 of the Copyright Act, so construed, to be unconstitutional if it requires reference to the law of New York as that stood on Higgins' death; or to hold that the New York Decedent Estate Law was unconstitutional and that an illegitimate child of a New Yorker was always entitled to share in the father's state.

Plaintiff pretermits what an enthusiast over Levy characterizes as "the interesting question * * * whether it will be extended to the father-child relationship," with what is considered the pleasant result of invalidating "hundreds of state statutes and several federal laws"[3] —not to speak of the common law rule in force when the Fourteenth Amendment was adopted. The highest courts of Ohio and Missouri have reached differing results concerning the illegitimate child's right to paternal support, Baston v. Sears, 15 Ohio St.2d 166, 239 N.E.2d 62 (1968); R—— v. R——, 431 S.W.2d 152 (Mo.1968); cf. Munn v. Munn, 450 P.2d 68 (Colo.1969). In Schmoll v. Creecy, 54 N.J. 194, 254 A.2d 525 (1969), the Supreme Court of New Jersey refused, in the light of Levy, to follow a direction in the state's wrongful death statute keying recovery to those entitled to take by intestacy when that course would have ruled out illegitimate children of a father. The effect of Levy and Glona in

---

1. In 1965 the law was changed to provide that an illegitimate child "is the legitimate child of his mother so that he and his issue inherit from his mother and from his maternal kindred," and also "is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child." This provision applies only to estates of persons who die after March 1, 1966. Laws 1965, c. 958, now N.Y. Estates, Powers and Trusts Law § 4–1.2(a) (1) and (2).

2. The general revision of the Copyright Act passed by the House of Representatives on April 11, 1967, and still under consideration by the Senate, defined a person's children as "his immediate offspring, whether legitimate or not, and any children legally adopted by him."

3. Krause, Legitimate and Illegitimate Offspring of Levy v. Louisiana—First Decisions on Equal Protection and Paternity, 36 U.Chic.L.Rev. 338, 339 (1969).

cases of actual intestacy of the father, which *DeSylva* held to be the closest parallel to the forced succession of the Copyright Act, seems not yet to have been directly decided by the highest court of any state. But see In re Estate of Jensen, 162 N.W.2d 861, 877–879 (N.D.1968) ; Succession of Bush, 222 So. 2d 642 (La.Ct.App.1969) ; Strahan v. Strahan, 304 F.Supp. 40 (W.D.La.Sept. 22, 1969).

▋ We find it unnecessary to attempt to forecast whether the Supreme Court will differentiate between the situations of the father and of the mother.[4] In *Levy* and *Glona* the Court had no problem of defeating reasonable expectations that any party had entertained in the past. It held merely that the illegitimacy of the plaintiff or the decedent was not a constitutionally adequate defense to a wrongful death action. Obviously the defendants in those cases had not killed Mrs. Levy or Mr. Glona in reliance on their relatives being illegitimate. We deal here with a transaction carried out between the defendant and Mrs. Higgins twenty years ago when no one would have supposed Mary Ann Booker had any expectancy in the renewal of her father's copyright. We do not undertake to say precisely what degree of retroactive application, if any, *Levy* and *Glona*, may ultimately be given. We do say that, in light of the practical approach the Supreme Court has recently been taking with respect to the effect of novel constitutional doctrine, in the civil as well as in the criminal field, see Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) ; Simpson v. Union Oil Co., 377 U.S. 13, 24, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), but see 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed. 2d 13 (1969) ; cf. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231

(1968), it will not apply *Levy* and *Glona* so as partially to invalidate a commercial transaction carried out in good faith in the 1940's. It would hardly be suggested that if Higgins had died intestate and all his property had been distributed to his widow in 1937, Mary Ann Booker could now claim a share of the estate. We see no reason for a different result with respect to the copyright renewal right.

Affirmed.

---

4. We do suggest, however, that the differences in the problem of proof are not to be minimized. As any lawyer with experience in defending against claims of relationship advanced long after the criti-

cal date would vividly realize, it is altogether too simplistic to say "Recovery should be denied in the absence of proof, but granted in the presence of proof," see *Krause, supra.* 36 U.Chic.L.Rev. at 344.