In re L——.

No. 8943.

Springfield Court of Appeals,
Missouri.

Dec. 8, 1970.

David E. Blanton, Blanton, Blanton & Rice, Sikeston, for plaintiff-appellant.

Robert C. Hyde, Hyde, Purcell & Wilhoit, Poplar Bluff, for defendant-respondent.

HOGAN, Judge.

In this declaratory judgment action, plaintiff, individually and as next friend for her female child, L——, seeks an adjudication that defendant is L——'s father, and an order for L——'s support. The trial court has sustained defendant's motion for summary judgment, and the plaintiff has appealed.

Plaintiff is married, and she is the mother of two children conceived of that marriage. L—— is a female child about two years old. We are not advised by the record whether defendant is married or not, but in any case he is not married to the plaintiff. The substance of plaintiff's petition is that L—— was born July 21, 1968; that plaintiff is L——'s natural mother and defendant is her natural father; that defendant has refused to "assume the responsibilities of fatherhood" and provide for L——; and that plaintiff is without means to support, maintain and care for L——, but defendant is financially able to do so. Averring further that a justiciable controversy exists, plaintiff prays for an order of the court: (a) declaring that defendant is L——'s natural father; and (b) awarding plaintiff a reasonable sum for L——'s support and maintenance.

After the petition was filed, and presumably served, the defendant served interrogatories upon plaintiff, which she answered. These interrogatories and the answers thereto are most important to our consideration of this case, and we set them forth verbatim:

"*Int. 1:* Were you a married woman at the time the child, [L——], was conceived?

*Ans. 1:* Yes.

*Int. 2:* If so, were you living with your husband within a period of:

(a) 24 hours before or after the aforementioned conception?

(b) One week before or after the aforementioned conception?

(c) One month before or after the aforementioned conception?

*Ans. 2:* The undersigned, [plaintiff], occupied the same household that her husband occupied but did not share the same bed at any time for any purpose during the period referred to in Interrogatory No. 2.

*Int. 3:* If so, was your husband, to your knowledge, sterile, impotent, or otherwise incapable of conception at the time of your alleged conception with the Defendant?

*Ans. 3:* Not to the undersigned's knowledge.

*Int. 4:* Has your husband, to your knowledge, been advised by any medical authority that he is impotent or sterile?

*Ans. 4:* Not to the undersigned's knowledge.

*Int. 5:* Have any children been born to you and your present husband? Please state their dates of birth.

*Ans. 5:* Yes. One child born January 6, 1957 and another child born October 10, 1961.

*Int. 6:* When and where did the alleged conception between you and the Defendant occur?

*Ans. 6:* October 25, 1967 at the undersigned's home.

*Int. 7:* Please state the names of any and all witnesses who saw you and the Defendant together at the time of or within 24 hours before or after the time of conception?

*Ans. 7:* As far as the undersigned knows only the undersigned and the Defendant

know that they were together at the time referred to in Interrogatory No. 7.

*Int. 8:* Did you engage in sexual intercourse with any person other than this Defendant within one month before or after the aforementioned conception? If so, identify any and all such persons.

*Ans. 8:* No.

*Int. 9:* Who is presently supporting the child, [L——]?

*Ans. 9:* The undersigned and her husband have furnished food for the child and relatives and friends have contributed clothing and other necessities.

*Int. 10:* State the average yearly incomes of any and all persons who are supporting this child, if you know.

*Ans. 10:* Unknown.

*Int. 11:* State the average monthly financial contribution toward the support of the child made by any and all such persons, if you know.

*Ans. 11:* Thus far the financial contribution toward the support of the child by the undersigned and her husband has amounted to about $20.00 per month."

Thereafter, the defendant filed an answer and moved for summary judgment on the ground that there was no genuine issue as to any material fact. In the body of his motion, the defendant noted that the case was in substance a compulsory filiation proceeding, that plaintiff had stated that she occupied the same house as her husband within a period of 24 hours before the date L—— was allegedly conceived, and that she had said that to her knowledge her husband was neither sterile nor impotent. Asserting that the presumption of legitimacy of a child born in wedlock is "the strongest * * * known to the law," defendant argued in his motion that to rebut this presumption plaintiff would have to show that her husband could not have had sexual intercourse with her at the beginning of any reasonable period of gestation. Since plaintiff had admitted that her husband had access to her at the beginning of a reasonable period of gestation, defendant maintained, neither she nor L—— could possibly prevail in the action. In response to this motion, plaintiff filed an affidavit, stating once again: (1) that she was the mother of L——; (2) that L—— was conceived by her of the defendant on or about October 25, 1967; (3) that she had had no sexual connection with any man except defendant for one month prior and subsequent to the date of L——'s conception; and (4) that defendant had declared L—— to be his child. Upon this state of the record, the trial court entered a summary judgment for the defendant as provided by Rule 74.04(c), V.A.M.R.[1]

■ Some preliminary observations seem appropriate. Until recently, compulsory filiation proceedings were unknown in this state. Our General Asembly never enacted a bastardy statute, and our courts consistently held from 1892 until 1968 that the father of an illegitimate child was under no legally enforceable duty to contribute to his or her support. Heembrock v. Stevenson, Mo.App., 387 S.W.2d 263, 264–265 [4, 5]; James —— v. Hutton, Mo.App., 373 S.W.2d 167, 168–169 [1, 2] [4, 5]. In 1968, however, the United States Supreme Court, in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, and Glona v. American Guarantee & Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441, held that the equal protection clause of the Fourteenth Amendment, U.S.Const. amend. XIV, § 1, prohibited the states from discriminating between legitimate and illegitimate children insofar as the right of illegitimate children to recover for the wrongful death of their mother and the right of the mother to recover for the wrongful death of her illegitimate child

1. References to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

were concerned. Although the import of the *Levy* and *Glona* decisions is still problematic,[2] our Supreme Court and others have interpreted them to compel a construction of our statutes defining the obligations and rights of parents which affords illegitimate children a right equal with that of legitimate children to require support by their fathers. R—— v. R——, Mo., 431 S.W.2d 152, 154 [2]; Munn v. Munn, Colo., 450 P.2d 68, 69 [1, 2].[3] It is therefore clear that in this jurisdiction, the paternity of an illegitimate child and the liability of his or her putative father for support are matters which can properly be adjudicated and enforced in a declaratory judgment action. R—— v. R——, supra, 431 S.W.2d at 154 [2].[4]

The briefs and arguments of the parties reflect the fluid and complex nature of the law involved. They revolve around the presumption of legitimacy and its effect in this case. Obviously relying on the general rule that presumptions operate for both the moving and opposing parties on motion for summary judgment, 6 Moore's Federal Practice, ¶ 56.11 [10], p. 2210 (2d ed. 1966), and citing Jackson v. Phalen, 237 Mo. 142, 140 S.W. 879, Stripe by Shannon v. Meffert, 287 Mo. 366, 229 S.W. 762, and Ash v. Modern Sand & Gravel Co., 234 Mo.App. 1195, 122 S.W.2d 45, defendant argues that the record, supplemented by the presumption, demonstrates that plaintiff could not possibly overcome the presumption of legiti-

macy. Plaintiff, citing Simpson v. Blackburn, Mo.App., 414 S.W.2d 795, maintains that the presumption of legitimacy is simply another species of rebuttable presumption which disappears upon production of substantial evidence to the contrary. Since she has admitted adultery and has given evidence under oath that defendant is the father of her child, plaintiff says, the presumption has vanished, a material issue of fact exists, and the summary judgment should not have been granted.

■ In resolving these arguments, there are at least two partially conflicting factors to be considered. It is not news, as the expression runs, to say that the presumption of legitimacy cannot be satisfactorily described in conventional terms. Usually, presumptions are classified either as conclusive presumptions or rebuttable presumptions, Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, 316–317 [4–6]; Simpson v. Blackburn, supra, 414 S.W.2d at 801 [6], but the presumption that a child born in wedlock is legitimate does not really fit in either category. It is doubtless true to say the presumption is rebuttable, F—— v. F——, Mo.App., 333 S.W.2d 320, 326–327 [10]; Boudinier v. Boudinier, 240 Mo.App. 278, 293–294, 203 S.W.2d 89, 98 [4], but in our view it is in fact a presumption of a special nature,[5] and the "substantial evidence" required to overcome or rebut it must be of a considerably higher degree of cogency than that required to destroy the usual

---

2. See Jerry Vogel Music Co. v. Edward B. Marks Music Corp., 2d Cir., 425 F.2d 834 835–836 ("In *Levy* and *Glona* the Court * * * held merely that the illegitimacy of the plaintiff or the decedent was not a constitutionally adequate defense to a wrongful death action. * * * *"); Baston v. Sears, 15 Ohio St.2d 166, 239 N.E. 2d 62, holding that, in the absence of statute, an illegitimate child has no right to support from his father, despite *Levy*.

3. See also Krause, Legitimate and Illegitimate Offspring of Levy v. Louisiana— First Decisions on Equal Protection and Paternity, 36 U.Chi.L.Rev. 338, 346–353 (1969); Gray and Rudovsky, The Court Acknowledges the Illegitimate; Levy v.

Louisiana and Glona v. American Guarantee & Liability Insurance Co., 118 U. Pa.L.Rev. 1, 19–24 (1969).

4. See also State ex rel. Anonymous v. Murphy, Mo.App., 354 S.W.2d 42; Carlson v. Bartels, 143 Neb. 680, 10 N.W.2d 671, 674–675 [5]; Hines v. Hines, 12 Misc.2d 486, 169 N.Y.S.2d 1003, 1005 [1, 2]; 22 Am.Jur.2d Declaratory Judgments, § 65, p. 926.

5. See McCormick, Evidence, § 309, pp. 646–647 (1954); Morgan, Basic Problems of Evidence, ALI–ABA C.L.E. Series, p. 44 (1962); A.L.I. Model Code of Evidence, Rule 703, p. 313 (1942).

procedural presumption. The *Glona* opinion and its enthusiasts both recognize the danger of fraudulent claims in compulsory filiation proceedings,[6] and conceding the generally unenlightening nature of most comments on the quantum of evidence necessary to overcome the presumption of legitimacy, Simpson v. Blackburn, supra, 414 S.W.2d at 801–802, we nevertheless believe and hold that in this kind of case, where the child was born in lawful wedlock, the presumption of legitimacy stands until it is overcome by clear, cogent and convincing proof to the contrary.[7] On the other hand, Missouri has no civil filiation proceeding available to an illegitimate child seeking support from his or her father,[8] and it has been suggested, with some reason, that to say the presumption of legitimacy is rebuttable, but to apply it so that it is practically conclusive, in a filiation proceeding, is as discriminatory as denying recovery altogether.[9] Moreover, the real question on this appeal is not whether the plaintiff could probably prove her case, but whether or not on the record, aided by the presumption, the defendant has shown by unassailable proof that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law, bearing in mind that a genuine issue of fact exists if there is the slightest doubt as to the facts. Pagan v. City of Kennett, Mo.App., 427 S.W.2d 251, 252–253 [1–4].

■ In light of all these general considerations, we believe the trial court erred in granting the motion for summary judgment, principally because the defendant's evidentiary materials are simply not sufficient for their intended purpose. The question posed on the motion is in one sense a question of credibility, and as Professor Moore has summed up the movant's burden, he " * * * must make a showing that is quite clear what the truth is, [excluding] any real doubt as to the existence of any genuine issue of material fact." 6 Moore's Federal Practice, ¶ 56.-15 [3], p. 2336. Here, the plaintiff has testified to nonaccess by her husband for a period of at least 30 days prior to and subsequent to L——'s conception. She has not, in our view, unequivocally said that her husband is not impotent or sterile, but only that she does not know. She has admitted adultery with the defendant. Can we conclude from this and from the affidavit that plaintiff could not produce proof sufficient to overcome the presumption of legitimacy? We think not. The rule is that the presumption of legitimacy may be overcome by any competent and relevant evidence disclosing that the husband could not have been the father of the child,[10] and the credibility, the cogency and probative value of the plaintiff's testimony cannot and should not be made to depend upon the bare assertions contained in her answers to defendant's interrogatories.

6. See Glona v. American Guarantee & Liability Insurance Company, supra, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d at 444, "[o]pening the courts to suits of this kind may conceivably be a temptation * * * to assert motherhood fraudulently. * * *"; Gray and Rudovsky, op. cit., 118 U.Pa.L.Rev. at 20–21.

7. Stripe by Shannon v. Meffert, supra, 287 Mo. at 392, 299 S.W. at 771 [7]; JD v. MD, Mo.App., 453 S.W.2d 661, 663 [6]; F—— v. F——, supra, 333 S.W.2d at 327; Needham v. Needham, Mo.App., 299 S.W. 832, 834; Anno., 128 A.L.R. 713, 720–721 (1940).

8. Apparently, most jurisdictions have statutes, called bastardy or filiation statutes, providing a remedy for an illegitimate child seeking support. See 10 Am.Jur.2d Bastards, § 74, pp. 900–901; Schatkin, Disputed Paternity Proceedings, Appendix IV, pp. 619–688 (3rd ed. 1953).

9. See Gray and Rudovsky, op. cit., 118 U.Pa.L.Rev. at 21–22.

10. Needham v. Needham, supra, 299 S.W. at 834 [3]; Jackson v. Jackson, 67 Cal.2d 245, 60 Cal.Rptr. 649, 651, 430 P.2d 289, 291 [6]; Wright v. Hicks, 12 Ga. 155, 160; Clark v. State, 208 Md. 316, 118 A.2d 366, 371 [5], 57 A.L.R.2d 718, 727; 10 Am.Jur.2d Bastards, § 19, p. 859.

It would be imprudent for us to say what evidence might be received and considered on a trial of this case, but we may illustrate our point. Ordinarily, neither spouse may testify to nonaccess between the two when the legitimacy of a child born in wedlock is in issue, and this rule has been so generally accepted we have no doubt it is the law of this state. See JD v. MD, supra, 453 S.W.2d at 663, and authorities cited n. 6; McCormick, Evidence, § 67, pp. 145–146. Nevertheless, this rule is a rule of competency, McCormick, Evidence, § 67, supra, and like other rules of competency, may be waived. State ex rel. Reynolds v. Flynn, 180 Wis. 556, 193 N.W. 651, 655–656 [11] [12]. Plaintiff's competency to testify to nonaccess was waived here since the defendant served interrogatories and received answers thereto, cf., Watkins v. Watkins, Mo., 397 S.W.2d 603, 611 [9, 10], and her testimony as to nonaccess may be of much or little cogency, depending on the circumstances in which she was living with her husband. The rule, often announced, that one who seeks to prove the illegitimacy of a child born in wedlock must show that it is *impossible* for the husband to be the father of the child, does not require a showing that it was physically impossible; it is enough to show that he was present under circumstances affording clear and satisfactory proof that there was no sexual intercourse. Drake v. Milton Hospital Ass'n, 266 Mo. 1, 10–11, 178 S.W. 462, 464; Needham v. Needham, supra, 299 S.W. at 834 [3]; Anno., 57 A.L.R.2d 729, 745 (1958). Likewise, it may be said, mechanically, that proof of the wife's adultery at or about the time of conception is not in itself sufficient to overcome the presumption of legitimacy, but coupled with other circumstances, it may become cogent evidence of nonaccess and tend to prove that the husband is not the father of the child.

We need not pursue the matter further; on this meager record, we cannot say what proof may be developed, and certainly its weight and probative value will be for the trier of fact, whatever it may be. We only hold that on the record presented, the defendant has not sustained his burden of showing that no genuine issue of material fact exists. The summary judgment is therefore set aside and for naught held, and the cause is remanded to the circuit court for further proceedings not inconsistent with the views herein expressed.

TITUS, P. J., and STONE, J., concur.