**Linda R. S. et al., Plaintiffs,**

v.

**Richard D. and The State of Texas et al., Defendants.**

**Civ. A. No. CA–3–4336–B.**

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 1, 1971.

Windle Turley, Dallas, Tex., for plaintiffs.

John Tolle, Dallas, Tex., for Henry Wade.

Pat Bailey, Austin, Tex., for State of Tex.

Before THORNBERRY, Circuit Judge, and HUGHES and HILL, District Judges.

ROBERT M. HILL, District Judge:

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda R. S. brings this suit "on behalf of herself, her minor daughter, and on behalf of all other women and minor children who have sought, are seeking, or in the future will seek to obtain support for socalled illegitimate children from said child's father." Named as defendants are Richard D., the alleged father of plaintiff's child; the State of Texas; Dallas County District Attorney, Henry Wade; Honorable Robert W. Calvert, Chief Justice of the Texas Supreme Court; and Honorable Crawford Martin, Attorney General for the State of Texas. The relief requested by plaintiff is a declaratory judgment that two Texas child support laws are unconstitutional in their exclusion of children of unwed parents, a permanent mandatory injunction requiring the State of Texas and its officers to cease their alleged discriminatory application of the child support laws in question, and an order requiring Richard D. to pay child support.

Plaintiff alleges that she lived with defendant Richard D. for several months, became pregnant by him, and gave birth to his baby girl in late 1970. Plaintiff contends that the father refuses either to marry her or to support the child. She has requested that this three-judge court be convened to consider her contention that two Texas statutes are unconstitutional. The statutes in effect require fathers to support their legitimate but not their illegitimate children. The Court is of the opinion that this is not a proper case for three judges and remands to the District Judge to whom the application for relief was originally presented.

Congress passed the first three-judge court statute in reaction to the United States Supreme Court's decision in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Young* a federal district court temporarily enjoined the Minnesota Attorney General from enforcing Minnesota's maximum rates for railroad operation. The Supreme Court upheld the district court's power to grant the injunction and a flood of litigation by utilities followed. Many district courts struck down state statutes with abandon, and in 1910 Congress required that three judges were necessary to enjoin a state official from enforcing a state statute. The present three-judge court statute, 28 U.S.C. § 2281, is quoted below.[1]

---

1. 28 U.S.C. § 2281 provides:

An *interlocutory or permanent injunction* restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge

Because of the burdensome aspects of three-judge courts, the Supreme Court has narrowly construed § 2281. The following conditions must be met for a three-judge court to be properly convened:

(1) An interlocutory or permanent injunction must be sought.

(2) The injunction must be sought to restrain the enforcement of a state statute.

(3) The injunction must be sought against a state official.

(4) The statute must be challenged on grounds of federal unconstitutionality.

Plaintiff has challenged the constitutionality of two Texas statutes.

### Article 602

Article 602 of the Texas Penal Code provides:

Any husband who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his wife who may be in necessitous circumstances, or any *parent* who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her *child or children* under eighteen years of age, shall be guilty of a misdemeanor, and upon conviction shall be punished by confinement in the County Jail for not more than two years. (Emphasis added)

■ This three-judge court has been properly convened insofar as the challenge to Article 602 is concerned.

■ Article 602 provides that any "parent" who fails to support his "children" is subject to prosecution. However, Texas courts have held that only parents of legitimate children are amenable to prosecution under the statute. Beaver v. State, 96 Tex.Cr.R. 179, 256 S.W. 929 (1923). Therefore the proper party to challenge the constitutionality of Article 602 would be a parent of a legitimate child who has been prosecuted under the statute. Such a challenge would allege that because the parents of illegitimate children may not be prosecuted, the statute unfairly discriminates against the parents of legitimate children.

■ Linda R. S., plaintiff, cannot be prosecuted under the statute because the minor child involved in this case is illegitimate. Plaintiff therefore lacks standing to challenge the statute and this portion of her case must be dismissed.

### Article 4.02

■ Article 4.02 of the Texas Family Code provides:

Each spouse has the duty to support his or her minor children. The husband has the duty to support the wife and the wife has the duty to support the husband when he is unable to support himself. A spouse who fails to discharge the duty of support is liable to any person who provides necessaries to those to whom support is owed.

This statute is enforceable through a civil suit for damages against a defaulting spouse. There is no state official involved in the enforcement of Article 4.02. Since § 2281 provides that a three-judge court is proper only to enjoin a state official from enforcing a state statute, a three-judge court may not consider the challenge to Article 4.02. This portion of the case must be remanded to the judge to whom the application for injunction was originally presented.

We note in passing a further difficulty with this case. Plaintiff is requesting that a mandatory injunction issue against Henry Wade, the Dallas County District Attorney, ordering him to prosecute Richard D. and, apparently, all other fathers of illegitimate children who have refused to support them. Richard D. has never appeared in this case. Moreover, Linda R. S. and the State of Texas, without Richard's participation,

thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

stipulated that Richard is the father of Linda's child.

The portion of the case challenging Article 602 has been properly brought before this three-judge court. The Court dismisses the challenge to Article 602 for lack of standing.

The portion of this case challenging Article 4.02 is improper for the consideration of three judges. This three-judge court disbands as to the challenge to Article 4.02 and remands this portion of the case to the judge to whom the application for injunction was originally presented for further proceedings.

It is so ordered.

HUGHES, District Judge (dissenting):

I concur in the majority opinion that plaintiffs' challenge to the constitutionality of Article 602 of the Texas Penal Code has been properly brought before a three-judge court. I likewise concur in the majority opinion that the portion of the case in which the plaintiffs challenge Article 4.02 of the Texas Family Code is improper for the consideration of three judges and should be remanded to the initiating judge for further proceedings.

I dissent from the majority opinion that Linda R. S., plaintiff, for herself and her child and the class she represents, has no standing to challenge the constitutionality of Article 602 of the Texas Penal Code.

Article 602 provides in part that "any parent who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under eighteen years of age, shall be guilty of a misdemeanor * * *."

The statute has been construed by Texas courts to apply to the support of legitimate children but not to the support of illegitimate children. It is this application of the statute which is being challenged by Linda R. S.

The majority seeks to dismiss for lack of standing the question of the constitutional application of Article 602. This position is clearly dubious when considered in the light of recent opinions of the Supreme Court which have significantly altered the focus of the standing test. The Court in Baker v. Carr announced that standing exists when the complainant has "such a personal stake in the outcome of the controversy as to assure * * * concrete adverseness * * *." 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In Flast v. Cohen the retreat from requiring a "recognized legal interest" continued when the Court declared that if the required "nexus" exists between the claimant's status and "the nature of the * * unconstitutional action" then "the issues will be contested with the necessary adverseness * * * to assure that the constitutional challenge will be made in a form * * * capable of judicial resolution." 392 U.S. 83, 106, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947 (1968). The question of whether a litigant has standing does not rest on some artificial determination of whether there is a "recognized legal interest" but rather whether the Court should grant judicial review in order that justice may be done.

Since 1968 the Supreme Court has redefined the test for standing to mean that it arises when there is "injury in fact, economic or otherwise," within the "zone of interests to be protected" by the law in question. Association of Data Processing Serv. Organizations v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed. 2d 192 (1970). In Hardin v. Kentucky Utilities Co., 390 U.S. 1, 6, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), the Court stated that when a particular statutory provision indicates a legislative intent to protect a specific interest or to prohibit certain conduct, the party injured by nonfeasance or misfeasance of the governmental agency in the enforcement of the provision has standing to require compliance with that provision. A person for whom the statute was designed to protect would have standing to bring

a suit to enjoin an alleged violation of that statute.

Certainly the plaintiffs present the requisites for standing to challenge the constitutionality of Article 602. Linda R. S. and her minor daughter and the class of unwed mothers and illegitimate children have a personal stake in the constitutional application of the statute. The contested statute provides for the protection of a "child" from desertion and non-support by its "parents." The legislature demanded that parents care for and support their offspring and considered this fundamental duty so highly that it attached a criminal penalty for breaching it. As with other criminal laws, members of society have the right to expect that the agents of the state upon proper complaint will prosecute the law made by them for their protection. Clearly the statute was designed to compel parents to provide for their minor children under the threat of penal action. Smith v. Givens, 97 S.W.2d 532, 534 (Tex.Civ.App.—Dallas 1936). The discriminatory practice of the governmental agencies in not prosecuting and enforcing this legislative directive against parents of illegitimate children does result in an "injury in fact" to the plaintiffs. The Supreme Court has held, moreover, that unequal treatment is indicative of an injury sufficient to support standing to sue. Allied Stores v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

The plaintiffs are surely within the "zone of interest" that the legislature intended to protect with Article 602. The statute on its face protects the welfare of minor children. The plaintiffs complain, however, that the state has discriminated in the failure of the state to apply the statute to illegitimate minor children solely on the basis of their pro-

creation by unwed parents. The plaintiffs are within the class of persons that should be protected, and the activity of the state in the application of the statute clearly results in a direct injury and a deprivation of their constitutional right of equal protection. The Court has approved standing when the parties are "directly affected by the laws and *practices* against which their complaints are directed." (emphasis added). School District of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 224 n. 9, 83 S. Ct. 1560, 1572, 10 L.Ed.2d 844 (1963).

The majority contends that only the parent of a legitimate child being prosecuted under the law has standing to challenge the discriminatory application of the statute. They say that only he is being injured by the discriminatory prosecution of Article 602. This proposition is untenable. Clearly the State's conduct in the enforcement of the challenged statute has injured the plaintiffs and adversely affected their interest.

The plaintiffs seek as relief first, a judgment declaring Article 602 unconstitutional on its face and as applied because of the systematic exclusion of unwed mothers and children of unwed mothers from the benefit of the law; and second, an injunction to prevent the further exclusion of such persons from the protection of the statute.

Jurisdiction is based on 28 U.S.C. section 1343(3) (4).[1] The defendants contend that the plaintiffs have not alleged sufficient facts to confer jurisdiction upon the court under 42 U.S.C. section 1983. In particular, it is contended that this case is not ripe for federal action. It is true that when the case was filed, the plaintiffs had not made any attempt to file a complaint against Richard D. The Supreme Court held, however, in Pierce v. Society of Sisters, 268 U.S.

---

[1]. 28 U.S.C. section 1343(3) (4), provides: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law * * * of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens * * *

(4) To * * * secure equitable or other relief under any Act of Congress providing for the protection of civil rights * * *.

510, 536, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), that it is not necessary for the plaintiffs to attempt prosecution prior to filing suit. In *Pierce*, the plaintiff challenged the constitutionality of an Oregon statute requiring children to attend public schools at a certain age. The suit was held maintainable even though the operative date of the statute was two years away. In explaining its decision the Court said:

> "The injury to appellees was present and very real, not a mere possibility in the remote future. If no relief had been possible prior to the effective date of the act, the injury would have become irreparable. Prevention of impending injury is a well-recognized function of courts of equity." 268 U.S. at 536, 45 S.Ct. at 574.

Although it is the opinion of this writer that the failure of the plaintiffs to initiate official State action to prosecute Richard D. would not defeat jurisdiction, Linda R. S. conclusively established jurisdiction when she attempted to file a complaint with the District Attorney of Dallas County and he refused to prosecute. The case is therefore ripe for federal action.

In view of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and companion cases, the question of abstention must likewise be examined. These cases have narrowed the jurisdiction of federal courts in criminal cases from the broad holding of Zwickler v. Kooda, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) which stated that a declaratory judgment was proper to construe a statute prohibiting anonymous election literature even if there was no irreparable injury to justify an injunction.

*Younger* held that when a State court proceeding is pending, an injunction is improper except "under special circumstances." In the companion case Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), it was held that a declaratory judgment is also improper when a prosecution under the challenged statute is pending in State court at the time the federal suit is initiated. 401 U.S. at 72–73, 91 S.Ct. 764.

A later Supreme Court decision, Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) must likewise be examined. A Florida statute governing the school ad valorem taxes was challenged in the federal court as effecting "an invidious discrimination in violation of the Equal Protection Clause." Subsequently, a suit was filed in the State court attacking the statute primarily as violative of provisions of the Florida Constitution. In remanding the case, the Court noted that whenever State constitutional questions can be raised concerning a State law, and the federal court has been asked to construe in some way that State law, the federal court must abstain from any determination pending decision by a State court on the constitutionality of the law, even though the State constitutional issue is not being litigated in the federal court. If the State court decides the state law issues, its action "will obviate the necessity of determining the Fourteenth Amendment question." 401 U.S. at 478, 91 S.Ct. at 858.

This case can be distinguished from the recent Supreme Court cases herein cited. In those cases there was a pending suit in a State court involving the same statute that was the subject of litigation in the federal court. Here there is no case pending in a State court involving Article 602 of the Texas Penal Code. Moreover, it does not appear that there is any State ground still to be litigated as in *Askew*. Previously Texas courts have considered the question of the support of illegitimate children and have held that without a specific statute requiring such support a parent was under no duty to do so. As early as 1887 in Lane v. Phillips, 69 Tex. 240, 6 S.W. 610, the Supreme Court of Texas declared that the rules of the common law did not impose on a father the duty to support children not born in wedlock.

Beaver v. State, 96 Tex.Cr.R. 179, 256 S.W. 929 (Tex.Crim.App.1923), specifi-

cally construed the statute. Defendant had been convicted of failing to support his illegitimate child. The Court in reversing said:

"The rule of the common law has been so long established and so uniformly recognized that until the Legislature speaks in unmistakable terms showing an intention to change the rule in this state, we must perforce hold that the statute in question does not apply in the present instance."

Although *Beaver* is the only case specifically interpreting Article 602 of the Penal Code, other Texas cases [2] have on several occasions declared that under the common law a father had no duty to support his illegitimate children and without specific statutory authority Texas statutes requiring support of children applied only to legitimate children.

As indicated by this long line of cases beginning in 1887 and proceeding to 1971, it would indeed be useless for this Court to abstain to allow further litigation in the State court. Moreover, there is little likelihood of a case involving Article 602 being prosecuted because, as in this case, the District Attorney has refused to take a complaint. Certainly, this situation falls within the exception of *Younger, supra,* that "special circumstances" exist for the federal court not to abstain. I would so hold.

The question on the merits is whether the interpretation by Texas courts of the words "child or children" in Article 602 of the Penal Code to mean legitimate children constitutes an invidious discrimination against illegitimate children. There are three recent Supreme Court decisions crucial to a determination of this issue.

In Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) five illegitimate children filed suit in a Louisiana District Court for the wrongful death of their mother pursuant to the Louisiana wrongful death statute. The Louisiana Courts denied the relief sought by holding that the wrongful death statute only authorized actions in behalf of legitimate children. The Supreme Court held that such a limitation violated the Equal Protection Clause of the Fourteenth Amendment. In part, the opinion said:

"Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?" 391 U.S. at 71, 88 S.Ct. at 1511.

The Court also noted:

"We have been extremely sensitive when it comes to basic civil rights * * * and have not hesitated to strike down an invidious classification even though it had history and tradition on its side." *Id.*

The case of Glona v. American Guarantee & Liability Insurance, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), decided the same day as *Levy,* contained a variation of the facts in *Levy.* In *Glona* a mother of an illegitimate child was denied recovery by the United States District Court of Louisiana for the death of her illegitimate child under the Louisiana wrongful death statute. The Supreme Court reversed, holding that

"the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock." 391 U.S. at 76, 88 S.Ct. at 1517.

Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 1019, 28 L.Ed.2d 288 (1971) considered Louisiana's intestate succession law. Unlike the wrongful death statute, the intestate succession laws made specific reference to illegitimate

2. Home of the Holy Infancy v. Kasha, 397 S.W.2d 208 (Tex.Sup.1965); Curtin v. State, 155 Tex.Cr.R. 625, 238 S.W. 2d 187 (1950); L—— G—— v. F—— O.

P——, 466 S.W.2d 41 (Tex.Civ.App.— San Antonio 1971, writ ref'd n. r. e.); Bjorgo v. Bjorgo, 391 S.W.2d 528 (Tex. Civ.App.—Amarillo 1965).

children, providing that "[i]llegitimate children, though duly acknowledged, can not claim the rights of legitimate children. * * *" Plaintiff in *Labine* was an acknowledged illegitimate child; however, the father's estate was awarded to his collateral relations and the child appealed. The Supreme Court refused to invalidate the Louisiana statutory scheme, saying:

> "the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe they can provide better rules." 401 U.S. at 537, 91 S.Ct. at 1020.

While at first it would appear that in *Labine* the Supreme Court has overruled *Levy* and *Glona*, a closer examination reveals that it can be distinguished. In *Labine* the Court was dealing with the intestate succession laws and thus was concerned with the stability of land titles and promotion of the orderly distribution of property within the state.

After *Levy* and *Glona*, the Supreme Court of Missouri considered the question of support of illegitimate children in R. v. R., 431 S.W.2d 152 (Mo.1968), and held:

> "The decisions of the United States Supreme Court compel the conclusion that the proper construction of our statutory provisions relating to the obligations and rights of parents * * * affords illegitimate children a right equal with that of legitimate children to require support by their father." *Id.* at 154.

Two other courts,[3] one in Colorado and the other in New York, required equal support rights for illegitimate as well as legitimate children. The New York court noted:

> "In the light of the decisions of the United States Supreme Court * * * state statutes which discriminate against children on the basis of a classification as to whether they were born in or out-of-wedlock must be held to violate the Equal Protection Clause of the Constitution. Certainly there is no area in which such statutes should be more carefully scrutinized than where the support, the care, and the education of a child depend on their interpretation." 291 N.Y.S.2d at 519.

Only in cases involving inheritance statutes have the courts[4] drawn the line when it comes to applying *Levy*. These decisions, including the lower court decision in *Labine*, rested on the principle that the protection and stabilization of land titles was sufficient rational basis for discrimination against illegitimates in inheritance statutes.

Texas cases upholding the interpretation of Article 602 that it does not apply to illegitimate children rely entirely on the common law that the father is not responsible for the maintenance and support of an illegitimate child.

Traditional arguments advanced in favor of laws discriminating against illegitimates are that the discrimination promotes morals because it encourages marriages and deters extramarital sexual relations. While the promotion of morals is a legitimate governmental interest, it is doubtful that a rule which permits a father to avoid liability for the support of children born as a result of extramarital relations promotes this purpose. Rather it would seem to encourage promiscuity as it relieves the father of the duty to support. Nor would a rule requiring him to support his illegitimate children appear to destroy the family.

3. Munn v. Munn, 450 P.2d 68 (Colo. 1969); Storm v. None, 57 Misc.2d 342, 291 N.Y.S.2d 515 (N.Y.Fam.Ct.1968).

4. Strahan v. Strahan, 304 F.Supp. 40 (W.D.La. (1969); Labine v. Vincent, 229 So.2d 449 (La.Ct. of Appeals 1969); *cf.* Jerry Vogel Music Co. v. Edward B. Mark Music Corp., 425 F.2d 834 (2nd Cir. 1969).

There is nothing to indicate that this has been the result of those States imposing liability for the support of such children.

There is, in this writer's opinion, no rational basis for a distinction between legitimate and illegitimate children. The interpretation of the law which denies support to illegitimate children punishes a party (the child) solely because of conditions which were beyond his control and which result from the conduct of parties occurring before he came into existence.

In addition to there being no rational basis for the Texas courts' interpretation of Article 602 such manner of applying the law is an insurmountable barrier to the illegitimate child. Since 1887 Texas courts have held that the present statute does not apply to illegitimate children even though the statute itself simply says "child or children" and does not eliminate illegitimate children. There appears to be no possibility that Texas courts will change their interpretation. The legislature has been told by the courts that statutory authority must be given in order to provide support of illegitimate children. The legislature has never acted and has refused even though bills making such provision have been introduced in the legislature. The only way in which an illegitimate child can receive support at the present time under Texas laws is for the parents to marry, but the child has no control over this alternative and in this case Richard D. has refused to marry Linda R. S. Thus for all practical purposes there is an insurmountable barrier to receiving support under Texas laws for illegitimate children and specifically the child of Richard D. and Linda R. S.

I would, therefore, hold that the present interpretation of Article 602 of the Texas Penal Code by Texas courts excluding children of unwed parents as unconstitutional in violation of the Fourteenth Amendment of the United States Constitution and would issue a permanent injunction requiring State officials to apply Article 602 in such a way as to require parents of illegitimate children to provide support.