**STATE of Missouri ex rel. SENIOR ESTATES OF KANSAS CITY, INC., Petitioner-Respondent,**

**v.**

**Milton C. CLARKE et al., Respondents-Appellants.**

**No. KCD 27476.**

Missouri Court of Appeals, Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer Denied Nov. 19, 1975.

Aaron A. Wilson, James C. Bowers, Jr., Kansas City, for respondents-appellants.

Clem W. Fairchild, Philip B. Green, Kansas City, for petitioner-respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

The Kansas City Board of Zoning Adjustment (Board) appeals from a judgment of the circuit court which reversed an order made by the Board denying a permit to Senior Estates of Kansas City, Inc. (Senior).

Senior operates a nursing home which was built in 1960 pursuant to a permit issued by the Board. In 1964 the Board again issued a permit for the construction of an addition. By the application in question here, Senior sought a permit to build an addition which would accommodate an additional ten beds, and a parking lot for an additional twenty-one cars. In connection with its application, Senior submitted a site plan and a plot plan. From these plans the land area owned and occupied by Senior can be determined as well as the amount of space constituting the side yards. The number of beds which Senior would have after the addition was before the Board.

The Board's staff made a field investigation of the application and in connection therewith took pictures of the site occupied by Senior and the immediate surrounding area. In addition, the staff submitted to the Board at the hearing a large aerial photograph which has the area occupied by Senior marked in red with street designations for the streets in that immediate vicinity. This aerial shows the area for a considerable distance in all directions from Senior's property.

At the hearing on Senior's application, the chairman of the Board asked for the staff report. This report showed the permits previously issued, the request being made, and then stated that a part of the

tract was in the right-of-way of the proposed south midtown freeway. The report further stated a number of properties in the near vicinity had already been acquired for this freeway by the State Highway Department.

The staff also presented the Board correspondence between the staff and George Satterlee, district engineer with the State Highway Department. The staff had sent the plot plan submitted by Senior to Mr. Satterlee and requested him to mark on the plan the proposed right-of-way lines for the south midtown freeway. The staff also presented a letter from Mr. Satterlee by which he transmitted the plot plan back to the staff indicating he had drawn the right-of-way on the plan. Mr. Satterlee also stated his department opposed the application of Senior because to permit Senior to build the new parking lot in the area covered by the right-of-way of the proposed freeway would increase the right-of-way costs.

The public hearing consisted entirely of statements made by the attorney for Senior and John Monroe, an architect who had prepared plans for Senior. Before the hearing had formally started, Mr. Daly, the attorney, was asked several questions concerning the location of the proposed right-of-way. The chairman then asked if anyone representing the Highway Department was at the hearing and learned that no such representative was there. The remainder of the hearing consisted of statements and questions concerning the fact that the location of the proposed parking lot was within the right-of-way of the proposed south midtown freeway. This revealed that there had been talk of locating a south midtown freeway for a number of years. In fact, at one point Mr. Monroe stated: "As architects, we have been continually running into the midtown freeway for the past seventeen years and I think Mr. Satterlee was in kindergarten when it started and he may be retired before this portion is finished . . ." Mr. Daly also told the Board that an outdoor theater had been located some sixteen years previous at a point contrary to the desire of the theater owner, but solely to accommodate the right-of-way of the elusive freeway. Mr. Daly stated the freeway had yet to make an appearance anywhere near the theater.

The Board thereafter voted to deny the application with four members voting in favor of denial and one opposed. After this vote a letter was written to Senior's attorney by a Board staff member advising the application had been denied and stating, "said addition being within the present parking area serving this facility and the alternate further parking area being proposed on land to be acquired for future public right-of-way."

Thereafter Senior filed a writ of certiorari in the circuit court and upon issuance of the writ the complete file of the Board was certified to the court. Without taking any additional evidence the circuit court found there was not sufficient competent evidence in the record to warrant the Board denying the application.

On this appeal the Board contends the application was properly denied because the applicant did not introduce any evidence to show compliance with the requirements of the zoning ordinance before the Board would be authorized to issue a permit. These requirements include a finding by the Board, (1) the use does not materially damage or curtail the use of neighboring property, (2) the use conforms to the district regulations, (3) the use is compatible with the general use of the district, (4) the use does not jeopardize the public health, safety or welfare, and (5) the use does not violate the general spirit and intent of the zoning ordinance. In addition the applicant is required to have, (1) a minimum lot area of twenty-thousand square feet and a minimum width of one-hundred feet, (2) five-hundred square feet of lot area for each bed, (3) side yards of at least one-hundred percent greater width than the side yards required in District R–2B, and (4) off street parking on a basis of one space for each four beds and for each four employees.

On appeal in this type of case the review "is limited to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." *Rosedale-Skinker Improvement Ass'n v. Board of Adjustment*, 425 S.W.2d 929, 936[7, 8] (Mo. banc 1968). See also § 89.110, RSMo 1969. The same review is applicable both on this appeal and in the circuit court.

A review of the evidence before the Board shows the applicant submitted more than ample evidence to satisfy all of the requirements set out above. The aerial photograph showing the entire surrounding area, together with the individual photographs of Senior's property and the immediate surrounding area, shows the use here does not materially damage neighboring property and is compatible with the general character of the zoning district and does not jeopardize the public health, safety or welfare. The fact the Board had issued permits to Senior in 1960 and 1964 is ample evidence that the Board found the use made by Senior conformed to the applicable district regulations and did not violate the general spirit and intent of the zoning ordinance. While it had been a few years since these previous permits had been issued, it is a well recognized principle that "[p]roof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time." *Martin v. Sloan*, 377 S.W.2d 252, 256[2] (Mo.1964). See also 31A C.J.S. Evidence § 124.

Here there is no indication of any material change in the neighborhood where Senior was located nor any other change which would indicate any reason to find that Senior's effect on the neighborhood operation would be any different than it was at the time the previous permits had been issued. In this circumstance the above principle is peculiarly applicable and the conditions existing at the time of the previous permits are presumed to continue in the absence of any countervailing evidence.

The plot plan and site plan presented by Senior demonstrate a compliance with the area and parking requirements.

However, an examination of the record leaves the unmistakable impression that the Board's position on this appeal is contrary to the position the Board took at the hearing and in denying the application. The discussion in the public hearing and the letter which the Board caused to be sent to the applicant leaves no doubt the Board denied this application solely on the ground the parking lot which Senior was going to build was located within the right-of-way of the proposed south midtown freeway. This despite the evidence before the Board that talk of this freeway had been going on for at least seventeen years.

It cannot be disputed that Senior was the owner of this property and was entitled to the free and untrammelled use of it subject only to the valid exercise of the police power of the city. The possibility that a part of this property would be acquired for a highway right-of-way would in no way deprive Senior of the right to use and develop its property. *Hamer v. State Highway Commission*, 304 S.W.2d 869 (Mo. 1957).

In *Hamer* the court held that until condemnation proceedings have been finally concluded any improvement which the land owner would make in contemplation of the location of the highway would be voluntary and would be at his own risk. The court further stated that until such time as the taking was complete, "[t]he quantum of plaintiff's interest in and the permissible use of his property has not in any way been reduced." 304 S.W.2d 874[7, 8].

In *DeAngelis v. Minor*, 8 Misc.2d 994, 166 N.Y.S.2d 568 (Sup.Ct.N.Y.1957) the court stated at p. 569, "nor may the board deny the application on mere speculation that the State of New York may at some future date condemn some of the property."

In this case it is plain the Board was attempting to deny Senior the right to add

to its facilities solely to prevent improvements which might increase right-of-way costs for a freeway which might be built at some future time. As shown by *Hamer* and *DeAngelis*, this is a wholly impermissible reason. The Board would have no right to deny an application on this ground. For this reason the order of the Board denying Senior's application is illegal. The order also must fall because it is not supported by substantial and competent evidence.

Senior has filed a motion to dismiss the Board's appeal for deficiencies in their brief. While the brief is not a model, the motion is overruled.

The judgment of the circuit court is affirmed and the cause is remanded with directions to direct the Board to issue the requested permit to Senior.

All concur.