**DEFFENBAUGH INDUSTRIES, INC., Appellant,**

v.

**Barbara J. POTTS, et al., Respondent.**

**Joe & Virginia Stevinson, et al., Intervenor–Respondent.**

**No. WD 42099.**

Missouri Court of Appeals, Western District.

June 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 1990.

James W. Shaffer, Richard D. Rhyne, Charles H. Stitt, Kansas City, for appellant.

Joe F. Willerth and William B. Moore, Independence, for Barbara Potts, et al.

Sherwin L. Epstein and Mark R. Warnick, Kansas City, for Joe & Virginia Stevinson.

Before ULRICH, P.J., and SHANGLER and TURNAGE, JJ.

SHANGLER, Judge.

This opinion reviews a final decision of the City Council of Independence to deny the application of Deffenbaugh Industries for a special use permit to operate a sanitary landfill within its bounds. The decision was rendered after a hearing, and Deffenbaugh brought in the circuit court a petition for review of the adverse administrative decision. The petition in original form invoked the judicial review function of the circuit court under § 536.100 as for a party aggrieved by a decision in a contested case, sought redress from the agency action on grounds enumerated in § 536.140.2, and prayed for a reversal of the decision or for remand—adjudications open to the circuit court under § 536.140.5. That is to say, the Deffenbaugh pleadings engaged the judicial review remedy of Chapter 536, the Administrative Procedure and Review Act.

The judgment of the circuit court did not issue on the original petition, however, but on an amended pleading that compounded the petition for review with two separate counts for declaratory judgment. The relief sought by the combination of counts was not only the judicial review of the administrative decision to deny the application for the special use permit, but for a declaration that the sanitary landfill operated by Deffenbaugh was a permitted nonconforming use under the zoning ordinances of the city so that the provisions of the city zoning ordinance prohibiting the operation of the landfill without a special use permit were invalid and unenforceable, and for a declaration that the city was without power to deny a special use permit to Deffenbaugh, a licensee approved by the State of Missouri under §§ 260.200 *et seq.*

The City Council undertook formal response by an answer to the petition for review and to the counts for declaratory judgment, and by a counterclaim to enjoin the operation of the Deffenbaugh landfill—whose special use permit had by then expired—and for damages, and for a declaration that the decision of the City Council to deny the special use permit was lawful and upon proper evidence.[1]

---

1. There is no provision for a responsive pleading to a petition for judicial review of a final decision in a contested case under Chapter 536. [*Cf.* § 536.068]. We observe, but defer comment on, the anomaly and nonjusticiability in a proceeding under § 536.140 for judicial review

Intervention was then granted to the couples, Stevinson and Miller, owners of land contiguous to the landfill site, and they made formal answer to the amended petition. The pleading was a traverse of each of the three counts—the petition for review under § 536.100 and the counts for declaratory judgment.[2]

Thereafter, Deffenbaugh made formal reply to the counterclaim of the City Council to enjoin the operation of the landfill and for damages.

The judgment entered by the circuit court undertook to adjudicate in turn the Deffenbaugh petition for review and for declaratory judgments, and the counterclaim of the city to enjoin the operation of the landfill and for declaratory judgment. The judgment determined that the decision of the City Council to deny the special use permit to Deffenbaugh was supported by substantial evidence and was otherwise lawful, and denied the Deffenbaugh counts for declaration of the invalidity of the municipal zoning ordinance. The judgment determined also that the continued operation of the landfill by Deffenbaugh without a special use permit was unlawful and was otherwise injurious to the enjoyment of the contiguous property by their owners, and sustained the counterclaim of the city for a permanent injunction.

We determine, as did the judicial review of the circuit court, that the decision of the City Council to deny Deffenbaugh the special use permit rests on substantial evidence and is otherwise lawful. We determine also, that in a statutory proceeding for judicial review of a final administrative decision, pleadings for declaratory judgment and injunction are anomalous—and a judgment entered upon them, *coram non judice* and void. Accordingly, the decision of the City Council is affirmed, and the pleadings for declaratory judgment and injunction are dismissed.

■ The circuit court, although a court of general jurisdiction, exercises special powers confided by special statutes when it undertakes judicial review of a final administrative decision in a contested case under §§ 536.100 to 536.140. It can take cognizance of only those matters invested, so that its power to adjudicate is to the extent of the grant of the statute. *Randles v. Schaffner*, 485 S.W.2d 1, 3 (Mo.1972). The special statute defines the right as well as the remedy, so that a grant of relief beyond the authority of the statute is only pretense and without effect. *State ex rel. Kansas City v. Public Serv. Comm'n.*, 362 Mo. 786, 244 S.W.2d 110, 115 (1951); *Gray v. Clements*, 286 Mo. 100, 227 S.W. 111, 113 (1920). A judgment of a circuit court under §§ 536.100 to 536.140, therefore, is an adjudication of a court of limited jurisdiction. *Green v. Woodard*, 588 S.W.2d 522, 524[1, 2] (Mo.App.1979).

The right sections 536.100 to 536.140 secure is that invested by constitution: the judicial review of a quasi-judicial decision of an administrative agency in a contested case that affects a private right. Mo. Const. art. V, § 18 (1945, amended 1976); § 536.100; *Gothard v. Spradling*, 586 S.W.2d 443, 445[1, 2] (Mo.App.1979) (en banc). The remedy to redress that right is as provided by law, or if not, then by supreme court rule. Mo. Const. art V, § 18 (1945, amended 1976). In this case, the legislature gave remedy to the right of judicial review in a contested case by the enactment of §§ 536.100 to 536.140. *Farmer's Bank of Antonia v. Kostman*, 577 S.W.2d 915, 921[4–10] (Mo.App.1979). It also gave scope to the court of review, and the power of equity or for declaratory judgment were not given within that scope. § 536.140; *Jacobs v. Leggett*, 295 S.W.2d

---

of an administrative decision—an exercise of *limited* jurisdiction—of insinuated pleadings for declaratory judgment, injunction, and even money damages—exercises of the *original and plenary* jurisdiction of the circuit court. *Randles v. Schaffner*, 485 S.W.2d 1, 2[5, 6] (Mo. 1972); *Franklin v. Harris*, 762 S.W.2d 847, 849[5] (Mo.App.1989). This tangle of incongruous postures predisposed judgments the court

was without power to render. *State ex rel. Kansas City v. Public Serv. Comm'n.*, 362 Mo. 786, 244 S.W.2d 110, 113 (Mo.1951).

2. Section 536.110 empowers the circuit court with the discretion to grant intervention in the proceedings for review to "other interested persons."

825, 835[17] (Mo. banc 1956). That is to say, the enactment confers the authority to examine and correct the agency decision, but not to form a plenary judgment as by a court of general and original jurisdiction. § 536.140.5; *State ex rel. State Board of Registration for the Healing Arts v. Elliott*, 387 S.W.2d 489, 492[2, 3] (Mo. banc 1965); *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 94[1] (Mo.App.1982).

It is not only the construct of that enact-ment that withholds from the circuit court on judicial review the power of equity and for declaratory judgment. It is also precluded by the principle that equity will not act where an adequate remedy at law remains for redress. Deffenbaugh does not contend that the statutory remedy its petition invokes is not adequate to review its claim of aggrievement. Indeed, the procedures of §§ 536.100 to 536.140 were constituted to implement the mandate of our organic law that "[a]ll final decisions ... of any administrative ... body ... which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law ..." [Mo. Const. art. V, §22 (1945, as amended 1976)]. *Farmers Bank of Antonia v. Kostman*, 577 S.W.2d at 921[4–10]. The prescribed procedure of a statutory remedy adequate for redress is exclusive and, while still available, precludes resort to equity. *Ackerman v. City of Creve Coeur*, 553 S.W.2d 490, 491[1] (Mo.App.1977).

The declaratory judgment is particularly inapt as a device for judicial review of administrative actions of zoning agencies—such as denial by the municipal planning

commission of a special use permit. Its use for that function tends to unsettle the equipoise in the separation of powers section 18, article V of the Constitution so deftly accomplishes. *See generally* Shewmaker, Procedure Before, and Review of Decisions of, Missouri Administrative Agencies, 37 V.A.M.S. 145 (1953) (volume superseded 1988). That is because judicial review for that purpose under the special statutory procedures of chapter 536, as well as of zoning and planning chapters 64 and 89, is confined to the validity of decisions, and not of ordinances. *Allen v. Coffel*, 488 S.W.2d 671, 673[1] (Mo.App.1972). The legitimate reach of review by these procedures, therefore, extends to the quasi-judicial actions of the agency, and not to the exercise of its mingled legislative power. *Salameh v. County of Franklin*, 767 S.W.2d 66, 68 (Mo.App.1989). *Reynolds v. City of Independence*, 693 S.W.2d 129, 132[7, 8] (Mo.App.1985).[3] The pleading for declaratory judgment Deffenbaugh insinuates into the proceeding nevertheless seeks the judgment that, as applied to require of Deffenbaugh special use permit to operate the sanitary landfill, an ordinance enacted by the City Council was invalid. This pleading, if allowed in a judicial review of an administrative decision that affects private rights, however, would not only confound the legislative function of the City Council to enact an ordinance with its mingled power to render quasi-judicial actions under the ordinance, but would infringe the limits of the power of review under the special procedures for that purpose.[4] *Al-*

3. The scheme of the sanitary landfill as a permitted use in a zone designated A–1, but only with a special use permit, was enacted by the ordinance of the city council. The grant [or, in this case, denial] of a special use permit was also enacted by ordinance. An ordinance can be legislative or administrative in nature. *State ex rel. Ludlow v. Guffey*, 306 S.W.2d 552, 556[1–3] (Mo. banc 1957). In the first exercise of power, the action prescribed a new policy or plan, and so is legislative. In the second, the action merely pursued a plan already adopted by the legislative body, and so was administrative. *Williams v. City of Kirkwood*, 537 S.W.2d 571, 574[2–5] (Mo.App.1976).

4. The counts for declaratory judgment Deffenbaugh superimposes upon the petition for re-

view are diffuse and rambling pleadings. They may be understood to contend that the ordinance that provides for the special use permit to operate a landfill in an A–1 zone is invalid as an unlawful delegation of legislative authority to an administrative body for failure to prescribe standards that would ensure non-arbitrary exercise. Such a contention implicates the legislative function of the City Council and so does not present a justiciable controversy to a court with the limited power to review quasi-judicial decisions. *Salameh v. County of Franklin*, 767 S.W.2d 66, 68 (Mo.App.1989); *State ex rel. Casey's General Stores, Inc. v. City of Louisiana*, 734 S.W.2d 890, 895[3] n. 1 (Mo.App.1987). The counts for declaratory judgment may also be understood to include the contention that the

*len v. Coffel,* 488 S.W.2d at 673[1]; *Salameh v. County of Franklin,* 767 S.W.2d at 68; *Williams v. City of Kirkwood,* 537 S.W.2d 571, 574[2–7] (Mo.App.1976); *see* n. 3.

■ What remained for the legitimate review of the circuit court was the administrative decision of the City Council to deny the application for a special use permit. Deffenbaugh invoked the procedures of §§ 536.100 to 536.140 for the judicial review of that agency decision in the contested case before the City Council. Those sections apply, however, "unless some other provision for judicial review is provided by statute." §§ 536.100. The judicial review of a zoning and planning decision by a municipal agency is provided by § 89.110, and so controls. *Cohen v. Ennis,* 318 S.W.2d 310, 313 (Mo. banc 1958); *Ackerman v. City of Creve Coeur,* 553 S.W.2d at 492–493. The redress for a person aggrieved within that scheme is by a petition for writ of certiorari under § 89.110, and not by a petition for review under § 536.110.

It is the principle that where the legislature is empowered to and actually does provide a method of review, that special procedure is exclusive and must be used, or the court acts without jurisdiction. *Randles v. Schaffner,* 485 S.W.2d at 3; *Brogoto v. Wiggins,* 458 S.W.2d 317, 319 (Mo. 1970); *American Hog Co. v. County of Clinton,* 495 S.W.2d 123, 127 (Mo.App. 1973). That principle, so strict in the statement, however, has been virtually relieved by the steady assimilation of the judicial review provisions of Chapter 536 into the interstices of the comparable provisions for the review of contested zoning cases. These enactments are treated as *in pari materia,* so that where the special statute lacks a detail of procedure necessary to the effective function of judicial review, the general provisions of §§ 536.100 to 536.140 are consulted to supply the inadequacy. *State ex rel. State Tax Comm'n. v. Luten,* 459 S.W.2d 375, 378 (Mo. banc 1970).

*Luten* approved the opinion of this court in *State ex rel. Day v. County Court of Platte County,* 442 S.W.2d 178 (Mo.App. 1969), that treated the writ of certiorari procedure of § 64.660 for the judicial review of zoning decisions of first and second class county agencies *in pari materia* with the thirty day time requirement of §§ 536.-100 and 536.110 for a person aggrieved to bring a proceeding for judicial review in the circuit court—an element of procedure § 64.660 did not address. In *Ford v. Boone County,* 654 S.W.2d 169 (Mo.App. 1983) this court applied the rationale of *Day* to define the time limit for judicial review of a zoning decision under § 64.870.2.[5] Other decisions give effect to the notice provisions of § 536.110 to complete the lapse in the judicial review procedures of zoning decisions of a municipal agency under § 89.110. *See e.g., State ex rel. Henze v. Wetzel,* 754 S.W.2d 888, 893 (Mo.App.1988). Others also define the scope of judicial review of municipal zoning decisions as well as of county zoning decisions in terms of § 536.140. *Hart v. Board of Adjustment of the City of Mar-*

ordinance as applied to require a special use permit to operate a sanitary landfill was invalid since Deffenbaugh had already acquired a lawful nonconforming use. Such a contention, also, is not justiciable in such a proceeding, but for other reasons. *See Westside Enterprises v. City of Dexter,* 559 S.W.2d 638, 640[1, 2] (Mo. App.1977); T. Hellmuth, 18 Missouri Practice, Real Estate Law § 375 (1985).

The existence of a nonconforming use, in any event, is a question of fact—a proof Deffenbaugh never undertook before the City Council. *Schaefer v. Neumann,* 561 S.W.2d 416, 422[1, 2] (Mo.App.1977). The judicial review of administrative decisions is confined to questions of law that arise from the evidence adjudicated and the manner of that adjudication. Thus, the court of review is precluded from the consideration of evidence other than that presented to the agency. *Lorenz v. City of Florissant,* 747 S.W.2d 222, 227[2] (Mo.App.1988). The counterclaim for injunction to the petition for review the City Council pleads to restrain Deffenbaugh from operation of the sanitary landfill without a special use permit was not justiciable if for no other reason than that the enforcement of the ordinance was a matter never adjudicated by the City Council, nor subject to its administrative decision.

5. That provision is for judicial review of decisions of a board of zoning adjustment appointed by a county commission of any noncharter county under the alternative county planning and zoning enactment, §§ 64.800 to 64.905.

*shall*, 616 S.W.2d 111, 117[6] (Mo.App. 1981); *State ex rel. Cass County v. Dandurand*, 759 S.W.2d 603, 604[2] (Mo.App. 1988).[6]

The trend to coalesce the provisions of §§ 536.100 to 536.140 with the special statutes for judicial review of zoning decisions of a city or county agency culminates in opinions that are indifferent to any distinction and simply approve review under the procedures of Chapter 536. *Lorenz v. City of Florissant, Missouri*, 747 S.W.2d 222, 224 (Mo.App.1988) acknowledges the dogma: "Zoning cases ought to be filed pursuant to their special statutes." The opinion continues:

> Many zoning type cases have been reviewed pursuant to Chapter 536 RSMo. These cases involve the administrative review of decisions regarding special use permits, conditional use permits, or building permits. *See, e.g., McClain v. Board of Adjustment of the City of St. Louis*, 508 S.W.2d 301 (Mo.App.1974); *Standard Oil Division of Amoco Oil Co. v. City of Florissant*, 607 S.W.2d 854 (Mo. App.1980); *Alpha Portland Cement Co. v. Missouri Department of Natural Resources*, 608 S.W.2d 451 (Mo.App.1980); *City of Eureka v. Litz*, 658 S.W.2d 519 (Mo.App.1983); *State ex rel. Crouse v. City of Savannah*, 696 S.W.2d 346 (Mo. App.1985).[7] Since this case arises from the denial of a permit for exterior modifications, we review pursuant to Chapter § 536 RSMo.

It is sensible and sound principle that § 89.110 and §§ 536.100 to 536.140 be understood as functionally equivalent procedures for the judicial review of quasi-judicial decisions of municipal zoning agencies so that a misnamed pleading does not deprive the court of jurisdiction or prejudice the right to review.

The specific method of review by writ of certiorari under § 89.110 imposes only two significant details of procedure that the petition for review under §§ 536.100 to 536.140 does not prescribe: a petition duly verified and a venue in the city or county in which the property lies. A petition for review under §§ 536.100 to 536.140 does not require verification, and the venue lies in the circuit court of Cole County or the county of the residence of a plaintiff. The Deffenbaugh petition was signed by counsel for the petitioner, but not verified, and was brought in the county in which the landfill lies. Thus, the formal requirement of § 89.110 that a petition for writ of certiorari be *duly verified* was not met. It was held in *Kelly v. City of St. Louis Bd. of Adjustment*, 745 S.W.2d 177 (Mo.App. 1987), that an unverified petition deprived the circuit court of jurisdiction to review under § 89.110, and so could not be amended more than thirty days after the agency decision. That rationale was repudiated by the supreme court en banc in *Drury Displays, Inc. v. Board of Adjustment*, 760 S.W.2d 112 (Mo. banc 1988). That decision holds that not only may the petition be amended by verification to relate back to

**6.** The scope of review § 536.140.2 renders is by the express terms of that section made applicable to "all contested cases, whether or not subject to judicial review pursuant to sections 536.100 to 536.140, and in all cases in which judicial review of decisions of administrative officers or bodies, whether state or local, is now or may hereafter be provided by law, shall in all cases be at least as broad as the scope of judicial review provided for in this subsection...."

Judicial review under § 89.110 clearly comes within the compass of this section. Numerous decisions, without reference or consideration of § 536.140.2, nevertheless express the scope of review under § 89.110 in the terms of the minimal constitutional obligation for review of quasi-judicial administrative decision under art. V, sec. 18. *See e.g., Rosedale–Skinker Improvement*

*Assn. v. Board of Adjustment of the City of St. Louis*, 425 S.W.2d 929, 936[7, 8] (Mo. banc 1968); *Bell v. Cloud*, 764 S.W.2d 105, 107 (Mo. App.1988); *State ex rel. Senior Estates of Kansas City, Inc. v. Clarke*, 530 S.W.2d 30, 33 (Mo.App. 1975).

**7.** To this series we add *State ex rel. Steak n Shake, Inc., v. City of Richmond Heights*, 560 S.W.2d 373 (Mo.App.1977), a judicial review of a municipal decision on a conditional [special] use permit. That opinion makes no mention of § 89.110, the special statute that relates to judicial review of zoning decisions of a municipal agency, but simply approves the review given under Rules 100.01 to 100.07—then in effect in lieu of §§ 536.100 to 536.140. *See also Temple Stephens Co. v. Westenhaver*, 776 S.W.2d 438 (Mo.App.1989).

the date of the original pleading—as Rule 55.33(c) allows—but may be accomplished any time before entry of final judgment. That is because, as the decision explains [at 114], the lack of verification, where verification is required, only prevents the court from granting relief to the plaintiff. It does not on principle, however, deprive the court of power to entertain the petition.

■ The circuit court denied any relief to Deffenbaugh, thus the lack of a petition, *duly verified,* was not fatal to the "petition for review", so styled and alleged, as a pleading for judicial review of the municipal agency zoning decision under § 89.110.

The other elements of the writ of certiorari procedure under § 89.110 were satisfied by the pleading brought in the circuit court although expressed in the terms of a petition for review under §§ 536.100 to 536.140. That is because those elements of notice and scope of review are *in pari materia* with § 89.110 and assimilated into its function. *State ex rel. Henze v. Wetzel,* 754 S.W.2d at 895[3, 4]; *Hart v. Board of Adjustment of the City of Marshall,* 616 S.W.2d at 117[6]. The pleading qualified as a petition for writ of certiorari under § 89.110 although misnamed. A party who seeks avail of a remedy or relief under a particular statute need only plead facts that bring the case within the purview of the statute. *Estate of Williamson v. Williamson,* 380 S.W.2d 333, 338[5–7] (Mo. 1964). We treat the pleading brought by Deffenbaugh as one for remedy under § 89.110.

What remains of the multiple pleadings is the Deffenbaugh petition for judicial review under § 89.110 of the decision by the City Council to deny the application to renew a special use permit for the operation of a sanitary landfill. The judgment of the circuit court sustained the action of the municipal agency. We review the findings and decision of the agency, and not the judgment of the circuit court, to determine the lawfulness of the administrative action. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53[1] (Mo. banc 1985).

The decision of the City Council rests on this evidence:

The Deffenbaugh landfill operates in the City of Independence in an A–1 Agricultural zone. Under the municipal Zoning Ordinance, a sanitary landfill may be permitted only upon the grant of a special use permit by the municipal council. The sanitary landfill had operated at the location since 1972 before annexation of the area by Independence. It then functioned under a special use permit issued by Jackson County for a term of ten years. Then after annexation the owner of the landfill was granted a special use permit in 1982 for a term of five years, to expire on November 15, 1987. In the interim Deffenbaugh purchased the landfill site and the special use permit was amended to allow its operation by the new owner. It was made to terminate on November 15, 1987, as before, and imposed thirteen conditions of use. On February 23, 1987, Deffenbaugh applied for the extension of the special use permit for an additional ten years and also requested approval to extend the site vertically eighty feet and to borrow fill material from a contiguous tract.

A hearing was conducted on the Deffenbaugh application by the City Planning Commission, upon proper notice, as prescribed by § 14.01.008 of the municipal code. Deffenbaugh was present and with counsel, sworn testimony was presented, and a record of the proceedings maintained. There were numerous witnesses in opposition to the Deffenbaugh application. The Planning Commission denied the application and prepared findings of fact and conclusions of law for submission to the City Council. In the order of things under the code, the decision of the Planning Commission constitutes only a recommendation to the City Council. The Planning Commission sent on to the City Council, along with the decision to deny the Deffenbaugh application, draft ordinances to approve a special use permit limited to a three year term. The procedures under § 14.01.008 permit a rejected applicant to submit a writing of new evidence to the City Council on an issue on which evidence was not available at the time of the regular hearing before

the Planning Commission. Deffenbaugh gave no description of new evidence in the writing, but requested to be heard on a three year permit. The request was denied. Deffenbaugh then requested to withdraw its application and to submit a new application on new evidence for a three year permit. The request was denied. The City Council by ordinance entered August 17, 1987, denied the special use permit to Deffenbaugh, so that its authority to operate the landfill expired on November 17, 1987. The findings of fact and conclusions of law entered by the Planning Commission were adopted by the City Council.

There remain, from the oddity of pleadings and excess of nonjusticiable claims, two contentions legitimate for review of an administrative decision in a contested zoning case under § 89.110—as enhanced by the incorporated scope of judicial review provision of § 536.140.2. Deffenbaugh contends that the action of the City Council was made upon unlawful procedure, and that the decision was otherwise without support by competent and substantial evidence upon the whole record.

The decision by a municipal or county authority to grant or withhold a special use permit is administrative and affects private rights. *See* n. 3. And when entered—as under the procedures § 14.01.008 of the municipal code—by the determination of facts and the application of the law to the facts as found, the administrative decision is quasi-judicial. *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 496[5] (Mo. banc 1984). The procedures that lead to such an administrative decision, accordingly must comport with those rudiments of fair play and due process that befit a judicial trial. *Jones v. State Dept. of Public Health and Welfare*, 354 S.W.2d 37, 40[4–6] (Mo.App. 1962). That means that in the adjudication of private rights, the administrative agency must not only provide fair procedures, but also the opportunity for a hearing with the right to present evidence and a reasonable opportunity to know the claims of the opposing party and to meet them. *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938); *Tonkin v. Jack-*

*son County Merit System Comm'n.*, 599 S.W.2d 25, 32[7, 8] (Mo.App.1980).

The application by Deffenbaugh was not only to extend the special use permit for an additional ten years to operate the landfill, but also to allow the deposit of waste material to an additional 80 feet above the already approved land contours. There is no contention here that the hearing procedures before the Planning Commission on the application gave Deffenbaugh any other measure than the full process due. A public hearing was held by the Planning Commission on the application upon notice and extended over two sessions. Deffenbaugh was present with counsel. The testimony was taken under oath. It commenced with the presentation by the municipal planning staff of the topographical and other environmental implications of the application. Another staff witness tendered a video tape of the area and related that there was a 34.73% legal protest response to the Deffenbaugh application.

The Deffenbaugh evidence was by its attorney who presented a video tape to the Planning Commission. Counsel made it known to the Planning Commission that he "really didn't want to spend a lot of time going through the details of the landfill operation," but rather would explain the documents that accompanied the Deffenbaugh application. They included a scale contour map of overlays of the dimensions of the landfill when completely filled under the present permit and the dimensions of the landfill under the requested use. The other documents included statements of local trash haulers who approved of the manner of the operation of the landfill and who gave opinion that the closing of the operation would substantially increase the cost to the public of trash collection. In addition, three witnesses spoke in favor of the landfill: The mayor of the town of Lake Tapawingo, who testified that there was no alternative for the disposal needs of that small community except the Deffenbaugh landfill; the owner of a sanitation service in a nearby city, who praised the Deffenbaugh operation and the need for it; and another trash hauler from Independence who urged that the landfill be allowed to

function. None of these witnesses tendered any testimony on the merits of the application for extension of the special use permit, as such. The singular justification for approval of the application urged by counsel for Deffenbaugh to the Planning Commission was the need for such a facility.

The witnesses in opposition to the Deffenbaugh application were numerous. They ranged from environmentalist groups to nearby property owners to individual citizens of the municipality. There was an expert in hydrology and groundwater contamination, a land appraiser, environmental scientists, and other specialists presented against the extension of the special use permit to Deffenbaugh to operate the landfill. It was the sense of their testimony that the past use by Deffenbaugh was marked by numerous violations of the rules and regulations of the Missouri Department of Natural Resources, by large pools of standing water at the top of the landfill, significant leachate outbreaks to the sides of the landfill that drained into the nearby stream, lack of testing for improper phenols, violations on water quality as to heavy metals—and many other irregularities. It was the sense of this and other testimony that the continued use of the landfill would be detrimental to the best development of the surrounding area. In addition, there was evidence of significant odor problems from the operation of the landfill, uncontrolled leachate, methane gas vapors, and other consequences from the inadequate coverage depth applied by Deffenbaugh.

The Planning Commission, on consideration of the extensive evidence, adopted findings of fact and conclusions of law that gave credence and effect to the testimony in opposition to the extension of the special use permit. The agency on May 26, 1987, unanimously voted to deny the Deffenbaugh application to extend the special use permit, and on July 30, 1987, formally entered the order to recommend that action to the City Council. On August 17, 1987, the City Council adopted the recommendation by resolution, but failed to pass the ordinance bill for the submitted application and thus denied the permit.

On May 26, 1987, after the denial of the ten year extension to Deffenbaugh, the Planning Commission voted for a three year time limit on the Deffenbaugh special use permit, should the City Council reject the recommendation of the Planning Commission, and approve the Deffenbaugh application for an extension. On July 27, 1987, counsel for Deffenbaugh by letter to the municipal city manager noted that the actions of the Planning Commission on May 26, 1987, not only amounted to the approval of "'landfill performance provisions' not previously in effect [in the city, but also] placed a time limit of three years on this applicant's special use permit, if approved by the City." The letter complained that those actions "constitute[d] a significant change in conditions under which the proposed special use permit may operate," and requested to amend the application "in order to conform to the new requirements and to submit engineering data and other evidence in connection therewith." It concluded with the request by Deffenbaugh that the city council remand the application to the Planning Commission, "for further consideration and action." If there was a response, it is not before us. Then, on August 13, 1987, counsel advised the municipal Planning Director that Deffenbaugh withdrew the application for a special use permit to operate the sanitary landfill.

The only unfairness, or even irregularity, Deffenbaugh attributes to the procedure by which the agency came to decision to deny the special use permit was the deprivation of opportunity to present evidence as to the effect of a three year extension of the special use permit. Deffenbaugh argues that its application was for a ten year extension, and since the ordinances do not restrict the period of time for which a permit may issue, the applicant prepared for the hearing on the assumption that the question for decision was whether or not to issue a ten year permit. The Planning Commission indeed recommended to the City Council to deny the Deffenbaugh application altogether, but recommended also

that if the city council nevertheless approved the permit, it issue for three years only subject to "landfill performance standards." The Deffenbaugh argument concludes: "By adopting the 'standards', the Commission signaled its intention to submit to the city council only the question of whether to issue a three year permit"—and so "effectively changed the rules under which [Deffenbaugh] reasonably assumed its application was being considered." Had the fact that only a three year permit was open to decision been known to Deffenbaugh, that argument emphasizes, it could have presented evidence as to "the relatively less significant impact of permitting only three more years of landfilling at the site." The prejudice from the unfairness was compounded, Deffenbaugh says, because another application for the permit was precluded for one year by ordinance.

The special use permit is a technique of land regulation that enables government to more fully participate in the phases of land development. T. Hellmuth, 18 Missouri Practice Real Estate Law § 368 (1985). It subjects a use already permitted in a particular zoning district by the local legislative body to specified conditions. *State ex rel. Missouri Highway & Transp. Comm'n. v. Bank of St. Ann,* 631 S.W.2d 73, 74[1–3] (Mo.App.1982). It is termed *special use* because, although a use deemed by the local legislative body to be conducive to the welfare of the community, the activity may be incompatible with the basic uses in the particular location in relation to surrounding properties, unless certain conditions are met. *Coots v. J.A. Tobin Constr. Co.,* 634 S.W.2d 249, 253[8, 9] (Mo.App.1982). "In short, a special exception is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist." 3 E. Ziegler, Rathkopf's Law of Zoning and Planning § 41.05[1] (1989). The determination that the special conditions exist under the ordinance to allow the special use or exception was committed, under the terms of § 14.01.008 of the municipal code, to the recommendation of the Planning Commission and final determination of the City Council. In that role, the City Council acted administratively. *State ex rel. Manchester Improvement Co. v. City of Winchester,* 400 S.W.2d 47, 48[1] (Mo.1966); *State ex rel. Missouri Highway & Transp. Comm'n. v. Bank of St. Ann,* 631 S.W.2d at 74.

The standards that govern the grant of a special use permit by the municipal agency are those rendered in § 14.01.021 of the city code:

> A special use permit may be granted by the City Council *under such conditions as to* operation, site development, traffic circulation, screening, parking, signs, *time limit,* and any other conditions *as may be deemed necessary in order that such use will not seriously injure the appropriate use of neighboring property* and will conform with the general intent and purpose of this Article. [emphasis added].
>
> . . . .

It is evident from these terms that the time limit, as are the other conditions for a special use permit, is left to the discretion of the agency to impose as the necessity of the evidence prompts. It is not the applicant who defines the conditions of the special use—as the Deffenbaugh argument would have it—but the nature, location and incidents of the particular use under the ordinance standards.

■ The recommendation of the Planning Commission to deny the Deffenbaugh application was unconditional as was the decision of the City Council. The recommendation of the Planning Commission that any grant of permit by the City Council issue for only three years was even more hortatory and, in any event, was not adopted. It is evident from the record, moreover, that the Deffenbaugh presentation on the application for special use permit was not in terms of a ten year extension, or of any other allowance of time. It is fanciful to argue now that the denial of opportunity to present evidence as to "the relatively less significant impact of permitting only three more years of landfilling at the site" prejudiced the decision on the permit when the impact of any continued

use under the current permit was ever intimated by Deffenbaugh. The only evidence was that the conditions of the permit were flouted by Deffenbaugh—the regulations of the Department of Natural Resources were repeatedly violated, chemicals unsafe to the environment and to the water supply were allowed to leak from the landfill site, methane gas vapors and odors were given off, and the surrounding property values were seriously affected. Nor did the "landfill performance standards" the Planning Commission imposed upon the adjunct three year limit recommendation [never adopted by the City Council] introduce any element of proof not already inherent in the thirteen conditions under which Deffenbaugh already operated.

The multiform argument reduces to a single statement of unfairness: a procedure that unexpectedly adjudicates a right not in issue [a permit, but with a three year limit] and so without opportunity to the party affected to present evidence—an unfairness compounded because Deffenbaugh was precluded by ordinance from another application for a year. There were procedures open to Deffenbaugh, however, both to present new evidence not available because on an unexpected issue on the application for the special use permit, as well as to submit a new application within the one year prohibition.

The ground for either initiative under the ordinance [§ 14.01.008] is the existence of new evidence, defined as: "evidence which was not available to the applicant or not obtainable at the time of filing of [the] original application."

The ordinance enables an applicant, after the report and recommendation by the Planning Commission to the City Council, to submit a writing of the new evidence for presentation to the City Council. The ordinance also enables an applicant to submit an affidavit of new evidence to the Planning Commission as the basis for a new application within one year of action of the Planning Commission on the last application. Deffenbaugh conformed to neither procedure. The writing of the new evidence on the application heard by the Plan-

ning Commission and submitted to the City Council for decision neither described the nature of the new evidence as the ordinance requires, nor was properly directed, nor requested hearing of the new evidence before the City Council. That writing requested, rather, remand of the application to the Planning Commission "for further consideration and action"—a method and redress the ordinance simply does not prescribe. The writing to submit a new application within the year of the last was not by affidavit of new evidence and so was disqualified for that purpose.

The procedure by which the Planning Commission heard the Deffenbaugh application and the City Council came to decision was neither irregular nor unfair. The contingent recommendation of a three year limit on any special use permit approved by the City Council rested on the evidence properly before the agency under the ordinance standards and inhered as an issue for administrative discretion on any such application. *Sowder v. Board of Police Commissioners,* 553 S.W.2d 525, 529[11] (Mo.App.1977).

■ What remains is the contention that the decision of the City Council to deny the special use permit does not rest on competent and substantial evidence upon the whole record, and so was unlawful. Substantial evidence is competent proof, which if accepted as fact, enables a reasonable person to find the issues in harmony with the proof. *Collins v. Division of Welfare,* 364 Mo. 1032, 270 S.W.2d 817, 820[5, 6] (banc 1954); *Gamble v. Hoffman,* 732 S.W.2d 890, 893 (Mo. banc 1987). The evidence before the agency factfinder and the facts as found—already delineated—of the heedless noncompliance by Deffenbaugh of the conditions of the special use permit sought to be extended, and of their adverse effect on the surrounding properties and on the citizenry, sufficed as the basis for the denial of the renewal of the special permit.

The decision of the City Council to deny the Deffenbaugh application for a special use permit is affirmed.

The judgment of the circuit court to deny declaratory relief on Count II and Count

III of the Deffenbaugh petition is set aside and Count II and Count III of that petition are dismissed.

The judgment of the circuit court to grant the counterclaim of the City of Independence for permanent injunction against Deffenbaugh and for declaratory judgment is set aside and the counterclaim is dismissed.

All concur.