STATE of Missouri, S— M— S—, by Serena Sue Sult, as Next Friend, and Serena Sue Sult, Individually, Petitioners–Respondents,

v.

Brian Eugene DODD, Respondent–Appellant.

No. 21488.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 1998.

Jacob Y. Garrett, for Appellant.

Michael S. Kisling, for Respondents.

SHRUM, Judge.

This is a case brought under Missouri's version of the Uniform Parentage Act, § 210.817 et seq,[1] in which the trial court adjudged Brian Eugene Dodd (Father) to be the natural father of S___ M___ S___. This appeal presents two issues:

1.  Did Father's failure to request a jury trial "within ninety days of the first responsive pleading" as required by § 210.839 result in a waiver of his right to trial by jury?

2.  Did the trial court err when it admitted blood test results over Father's objection that the proponent of the evidence had to present live expert testimony "to establish proper interpretation of the results?"

Affirming the judgment, we answer "yes" to the first question and "no" to the second.

## FACTS

When teenagers, Father and Serena Sue Sult (Mother) engaged in sexual relations for approximately a year and a half, which included the probable time of S___ M___ S___'s conception.[2] During that period, Father was the only man with whom Mother had sexual relations. They had ceased dating by the time Mother learned in July 1981 that she was pregnant. Mother told Father of her pregnancy, but they never re-established a relationship and never married. The child, S___ M___ S___, was born February 12, 1982. Throughout, Father paid no support for the child and had no contact with her.

---

1.  References to statutes are to RSMo 1994 and rule references are to Missouri Court Rules (1996) unless otherwise indicated.

2.  When referring to both Mother and S___ M___ S___, we call them Respondents.

This paternity action against Father was commenced in January 1995. His answer, filed on March 6, 1995, denied paternity. Blood testing was ordered and the results thereof were furnished to Father's counsel on August 14, 1995.[3]

On September 5, 1995, Father filed a written request for jury trial. Counsel for Respondents immediately objected to Father's jury trial request, citing § 210.839.4 as authority for their position that Father's request was untimely.

A hearing on Father's jury trial request set for October 2, 1995, was not taken up as scheduled. Instead, the trial court sustained Father's request that C__ O__ be added as a party based on Father's allegation that C__ O__ was S__ M__ S__'s natural father. C__ O__'s answer to the third-party petition filed against him contained his request for trial by jury. Based on C__O__'s request, the case was scheduled for jury trial on November 13, 1996.

Later, when laboratory blood test results excluded C__ O__ as the biological father of S__ M__ S__, the trial court sustained C__ O__'s motion for dismissal as to him. With C__ O__ no longer in the case, the trial court found that Father's request for jury trial was not timely filed, removed the case from the jury docket, but left it on the November 13 docket for trial to the court.

At trial, Father objected to the admission of the blood test result without the use of live expert testimony. The trial court overruled the objection, admitted the evidence, and ultimately found Father to be the natural father of S__ M__ S__. This appeal followed.

## DISCUSSION AND DECISION

*Point I: Waiver Of Jury Trial*

■ The "Uniform Parentage Act" (UPA), §§ 210.817–.852 was first enacted in Missouri in 1987 (effective July 15, 1987). The purpose of the UPA was to establish a uniform means for deciding paternity that would protect the rights of all parties involved, especially children. *See Piel v. Piel,* 918 S.W.2d 373, 375 (Mo.App.1996).

Under the UPA, "[a]ny party shall have a right to trial by jury" but must request a jury "within ninety days of the first responsive pleading." § 210.839.4. Although Father's jury trial request was not timely under § 210.839.4, he claims in his first point relied on that the trial court erred when it denied him a jury trial. He advances several reasons why the trial court erred. We examine his claims separately.

Father first contends that he "did not waive [his] right to trial by jury [because he] is ... constitutionally entitled to a trial by jury unless waived in accordance with Missouri Supreme Court Rule 69.01(b)." He cites Mo. Const. (1945), art. I, § 22(a) which provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate."

As to Rule 69.01(b), it provides:

"(b) **Jury Trial–How Waived.** Parties shall be deemed to have waived trial by jury:

"(1) by failing to appear at the trial;

"(2) by filing with the clerk written consent in person or by attorney;

"(3) by oral consent in court, entered on the minutes;

"(4) by entering into trial before the court without objection."

■ Father's argument is that the constitutional provision cited entitled him to a jury trial unless he waived that right in one of the four ways prescribed by Rule 69.01(b). Such argument, however, misstates the meaning of Article I, Section 22(a) of our constitution. This provision holds inviolate the right to trial by jury as "heretofore enjoyed." *Hammons v. Ehney,* 924 S.W.2d 843, 848 (Mo. banc 1996).

"Particularly, the phrase 'as heretofore enjoyed' has been interpreted to mean that the constitution protects the right as it existed when the constitution was adopted and does not provide a jury trial for proceedings subsequently created.... [T]his court has stated multiple times that the right [to jury trial] applied to actions that

**3.** The record furnished to this court does not include the results of these tests.

existed at common law before the adoption of the first constitution, in 1820."

*Id.* at 848–49[12]. (citations omitted).

As pointed out in *James v. Hutton,* 373 S.W.2d 167 (Mo.App.1963) and in cases cited therein, "at common law there was no legal duty on the father of illegitimate children for their support." *Id.* at 168. Moreover, "[o]ur General Assembly never enacted a bastardy statute...." *In re L——,* 461 S.W.2d 529, 531 (Mo.App.1970). It was in *R—— v. R——,* 431 S.W.2d 152 (Mo.1968), that our supreme court first afforded "illegitimate children a right equal with that of legitimate children to require support by their fathers." *Id.* at 154[2]. Also, it was in *R——* that a Missouri court first recognized that the paternity of an illegitimate child and the liability of his or her father could properly be adjudicated and enforced in a declaratory judgment action. *In re L——,* 461 S.W.2d at 532[1].

■ It is true that under Missouri's Declaratory Judgment Act the right to jury trial was afforded when paternity was the issue. *See K.D.R. v. D.E.S.,* 637 S.W.2d 691, 694[4] (Mo.banc 1982). Generally, however, the UPA is now the exclusive method for adjudicating paternity in Missouri. *See Roberts v. Roberts,* 920 S.W.2d 144, 146[3] (Mo. App.1996). *But see Matter of Nocita,* 914 S.W.2d 358, 359 (Mo.banc 1996).

As noted earlier, Missouri adopted the UPA in 1987. The UPA procedure was not known to common law or in existence before the 1820 Constitution. Therefore, trial by jury to decide paternity in the manner prescribed by the UPA was not "heretofore enjoyed" under the constitution. Father's argument that he had a "constitutional" right to a trial by jury is rejected. Whatever right Father had to a jury trial derives not from the Missouri Constitution, but from § 210.839.4.

■ Father's second argument is that the trial court erred when it denied him a jury trial because § 210.839.4 does not explicitly provide that "failure to make a request within ninety days results in a waiver of a party's right to jury trial." Respondents answer this argument by asking: "What purpose would be served to include a time provision in Section 210.839.4 for requesting a jury trial if not to place a cutoff period for such a request?" Continuing, Respondents say: "Any other interpretation of the statute would render the time provision a nullity." We agree. Father's argument on this has no merit. "Missouri courts do not presume that the General Assembly enacts meaningless provisions." *Parrott v. HQ, Inc.,* 907 S.W.2d 236, 240[6] (Mo.App.1995).

■ Next, Father asserts that the General Assembly was "unable" to "provide a manner of waiving a jury trial other than that which is set out in ... Rule 69.01(b)" Relying on *Meadowbrook Country Club v. Davis,* 421 S.W.2d 769 (Mo.banc 1967), Father argues that Rule 69.01(b) provides "the sole manner in which a right to trial by jury may be waived." Continuing to rely on *Meadowbrook,* Father insists that legislative "attempts to create other methods of waiver are invalid." Again, we disagree.

The only question in *Meadowbrook* was the validity of a local rule of the St. Louis Circuit Court. That rule required a party to file a request for a jury trial within thirty days on appeal from the magistrate or municipal court. The action was a suit on a debt; consequently, it was an action at law within the constitutional guarantee of the right to trial by jury unless the jury was properly waived. 421 S.W.2d at 772–73. It was in that context that the *Meadowbrook* court wrote: "We conclude that the methods of waiver prescribed by § 510.190 and Rule 69.01(b) are exclusive, *at least insofar as the facts of this case are concerned.*" *Id.* at 773. (emphasis added).

The issue in *Meadowbrook* was dissimilar to the issue here. In *Meadowbrook,* the right to trial was constitutionally protected. Here, Father's right to jury trial was afforded him by statute, not the constitution. As the legislature had authority to give UPA litigants the right to jury trial, it certainly had the power to determine the modes of waiver. Id. at 773.

Finally, Father cites *State v. Reese,* 920 S.W.2d 94 (Mo.banc 1996), and *Ostermueller v. Potter,* 868 S.W.2d 110 (Mo.banc 1993), for the principle that where there exists a con-

tradiction between a statute and a Missouri Supreme Court rule, the rule shall govern. Invoking that principle, Father again argues that the legislature could not enlarge the methods for waiver of jury trial beyond what is set out in 69.01(b). Again, we disagree.

"Art. V., § 5 of the 1945 Constitution, grants the supreme court the power to establish rules of practice and procedure for all courts with the limitation, however, that the rules shall not change 'the law relating to * * * juries, [or] the right of trial by jury * * *.' The general assembly acting within its proper domain has enacted statutory provisions relating to trial by jury in misdemeanor cases and the manner of waiving it. The concluding sentence of S.Ct. Rule 26.01(b) must be held to have no efficacy against contrary provisions of §§ 546.050 and 543.200. *The statutory provisions and not the rule are controlling.*"

*State v. McClinton,* 418 S.W.2d 55, 62 [10, 11] (Mo. banc 1967). (emphasis added).

For the reasons stated in *McClinton,* the controlling provisions concerning jury waiver in a UPA case are found in § 210.839.4 and not in Rule 69.01(b). We deny Father's first point.

*Point II: Blood Test Results*

Father's second point maintains that the trial court erred when it admitted blood test results in evidence over his objection. Father argues that the blood test results were not admissible in the absence of "live expert testimony to interpret the ultimate conclusion." Father concedes this position is not supported by case authority, but urges such result is dictated by "common sense" and § 491.070 which authorizes cross-examination in any civil action.

 Respondents counter by insisting that Father's failure to file a written motion challenging the blood testing procedure precludes his challenge to the admission of the test results at trial. We agree.

The pertinent portion of § 210.834.5 states: "An expert's verified report shall be admitted at trial as evidence of the blood test results stated therein unless a written motion challenging testing procedures or the results has been filed and served on each party at least twenty days before the trial, and the motion is sustained by the court."

Necessarily, the "blood test results" stated in an expert's verified report would include the conclusion determining the probability of a putative father's paternity or excluding the putative father from paternity. A putative father has the opportunity to challenge the conclusion stated in a blood test by filing a written motion at least twenty days before trial. "A claim of error in the admission of *blood test results* is foreclosed by § 210.834.5 if a motion challenging testing procedures or *results* is not timely filed and sustained." *State, Div. of Family Servs. v. Williams,* 861 S.W.2d, 592, 594 (Mo.App.1993) (emphasis added). Any objection regarding the conclusion of a blood test must be made in accordance with § 210.834.5. By not filing a timely written motion, Father's objection is waived. Point II is denied. The judgment of the trial court is affirmed.

PARRISH, P.J., and BARNEY, J., concur.