Howard ANDERSON, Respondent,

v.

DIVISION OF CHILD SUPPORT ENFORCEMENT, MISSOURI DEPARTMENT OF SOCIAL SERVICES, Appellant.

No. 22551.

Missouri Court of Appeals,
Southern District,
Division Two.

July 23, 1999.

Michael S. Kisling, Jefferson City, for Appellant.

Respondent's attorney: None.

ROBERT S. BARNEY, Judge.

The Division of Child Support Enforcement of the Missouri Department of Social Services ("Division") appeals from the judgment entered by the Circuit Court of Jasper County, Missouri, pursuant to the Circuit Court's powers of judicial review. §§ 536.100–.140; *see also* §§ 454.460–.510.[1] In its judgment, the circuit court reversed the findings and order of the Division's Administrative Hearing Office ("AHO") which had determined that Howard Anderson ("Respondent") was the biological father of Homer Anderson ("Minor"). Division raises four points of trial court error. We reverse, and remand with directions.[2]

The marriage of Respondent and Minor's mother, Rosa Lee Anderson ("Mother"), was dissolved by a decree filed on December 23, 1987. Minor was born on August 26, 1988.

On September 9, 1994, the Division filed a Notice of Finding of Financial Responsibility against Respondent alleging that he was the biological father of Minor.[3] Respondent then sought an administrative hearing under sections 454.470 and 454.475. During the telephonic hearing, Respondent and his attorney; Mother, as custodial parent; and a technician from the Division were present. In its subsequent findings and order, the AHO determined that Respondent was the presumed father of Minor per section 210.822.1(1), RSMo Supp.1988 and ordered Respondent to pay to Mother $97.00 per month as child support for Minor and provide health insurance coverage to Minor under certain conditions.

Respondent then sought judicial review under sections 536.100–.140. On May 13, 1996, the Circuit Court of Jasper County made an "Order for Paternity Testing" pursuant to section 210.834. Following the testing, the trial court entered its judgment dated July 7, 1998, finding that Respondent was not the biological father of Minor and ordering Division to reimburse Respondent $1,801.38, a sum representing previously collected child support from Respondent. Division's appeal followed.

In Point One, Division asserts trial court error in the trial court entering judgment without compliance with the provisions of the Uniform Parentage Act ("UPA"), sections 210.817–.852. In Point Two, Division maintains that the trial court erred in finding that Respondent was not the biological father of Minor. It argues that the trial

---

1. All statutory references are to RSMo 1994, unless otherwise set out.

2. Respondent has not filed a brief. "While there is no penalty prescribed for the failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of view." *Fitzgerald v. Director of Revenue*, 922 S.W.2d 478, 479 n. 3 (Mo.App.1996).

3. The impetus for the Division's action arose from Mother's filing of a Uniform Reciprocal Enforcement of Support Act (URESA) petition in Pennsylvania. A "Certificate and Order" was issued by a family division judge in Allegheny County, Pennsylvania, and relayed to Missouri, the "responding state." *See generally* §§ 454.010 – 454.360. The Division seasonably initiated its action under section 454.470 and issued its administrative order against Respondent, establishing paternity and support obligation.

court incorrectly relied on section 210.822.1(1) and section 210.826.1(2) in determining that Respondent was not the biological father of Minor. Instead, the Division maintains that Respondent was time-barred from seeking a declaration of non-paternity by operation of section 210.826.1(2), RSMo. Supp.1988 and the trial court had no jurisdiction to enter such a judgment. In its final two points, the Division argues that the trial court erred in awarding Respondent a judgment in the amount of $1,801.38 against Division, representing child support paid by Respondent, particularly since the Division was merely the collecting agency for the Commonwealth of Pennsylvania and no longer had these funds. Point Two is dispositive and is discussed below.

"The 'Uniform Parentage Act' (UPA), §§ 210.817–.852 was first enacted in Missouri in 1987 (effective July 15, 1987)." *State v. Dodd*, 961 S.W.2d 865, 867 (Mo. App.1998). Its purpose was "to establish a uniform means for deciding paternity that would protect the rights of all parties involved, especially children." *Id.* It has been held that, as a general rule, "the UPA is now the exclusive method for adjudicating paternity in Missouri." *Id.* at 868; *see Roberts v. Roberts*, 920 S.W.2d 144, 146 (Mo.App.1996); *but see In re Nocita*, 914 S.W.2d 358, 359 (Mo. banc 1996).

"The original UPA established a rebuttable presumption of paternity where a man was married to the child's natural mother when the child was born or if the child was born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or dissolution." *State ex rel. Lucas v. Wilson*, 963 S.W.2d 408, 409 (Mo.App.1998); *see* § 210.822.1(1), RSMo Supp.1988.[4] "The child, natural mother, presumed father, and division of child support services were given the right to bring an action 'at any time' for the purpose of establishing the existence of a presumed paternal relationship." *Id.*; *see* § 210.826.1(1), RSMo Supp.1988. "The next sub-section gave those same persons the right to file an action for the purpose of establishing the nonexistence of a presumed paternal relationship 'only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth.'" *Id.* (quoting § 210.826.1(2), RSMo Supp.1988).

In 1993, Missouri's version of the Uniform Parentage Act was amended to provide that:

A child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, a man alleging himself to be a father or the division of child support enforcement may bring an action at any time for the purpose of declaring the existence or non-existence of the father and child relationship presumed under subdivision (1), (2), or (3) of subsection 1 of section 210.822.

§ 210.826.1, RSMo Cum.Supp.1993.

■ As previously set out, Respondent and Mother were divorced on December 15, 1987. The dissolution of marriage decree made no recitals that Mother was pregnant. Minor was not mentioned in the decree. Minor was born on August 26, 1988. Under the provisions of section 210.822.1(1), RSMo Supp.1988 then extant, Respondent was presumed to be the father of Minor by operation of law. Minor then reached his fifth birthday on August 26, 1993.

■ On August 28, 1993, amendments to section 210.826.1(2), RSMo Supp.1988 took effect eliminating the five year statute of limitations to challenge the presumption of paternity. *See* § 210.826.1, RSMo Cum.

---

4. Section 210.822.1(1), RSMo Supp.1988 reads, as follows:

 1. A man is presumed to be the natural father of a child if:
 (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or dissolution, or after a decree of separation is entered by a court....

Supp.1993. Respondent failed to bring an action for the purposes of declaring the nonexistence of the father and child relationship presumed under section 210.822.1(1), RSMo Supp.1988 "within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth." § 210.826.1(2), RSMo Supp.1988. The limitation period for Respondent's action, therefore, expired on August 26, 1993, the date of Minor's fifth birthday. *See State ex rel. Wade v. Frawley*, 966 S.W.2d 405, 406 (Mo.App.1998); *Lucas*, 963 S.W.2d at 412–13. "[A] change in the statute of limitations will not revive a cause of action which has already expired." *Wade*, 966 S.W.2d at 407; *see also W.B. v. M.G.R.*, 955 S.W.2d 935, 937 (Mo. banc 1997); *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338, 341 (Mo. banc 1993).

 "The circuit court, although a court of general jurisdiction, exercises special powers confided by special statutes when it undertakes judicial review of a final administrative decision in a contested case under §§ 536.100 to 536.140." *Deffenbaugh Indus., Inc. v. Potts*, 802 S.W.2d 520, 522 (Mo.App.1990). "A judgment of a circuit court under §§ 536.100 to 536.140, therefore, is an adjudication of a court of limited jurisdiction." *Id.* "The court may 'take cognizance of only those matters in-vested, so that its power to adjudicate is to the extent of the grant of the statute.'" *Dino v. State Bd. of Pharmacy*, 909 S.W.2d 755, 757 (Mo.App.1995)(quoting *Deffenbaugh*, 802 S.W.2d at 522). "The scope of review granted the circuit court under the Administrative Procedure Act does not include the power of equity or of declaratory judgment." *Id.* at 757–58.

Here, sections 210.826.1(1) and (2), RSMo Supp.1988 precluded the trial court from entering its judgment finding the non-paternity of Respondent. *See Wade*, 966 S.W.2d at 407; *see also Dino*, 909 S.W.2d at 757; *Deffenbaugh*, 802 S.W.2d at 522. Point sustained. Accordingly, the trial court was not authorized to award Respondent a judgment against the Division for $1,801.38.

The judgment of the Circuit Court of Jasper County is reversed and the case is remanded for the purpose of entering a judgment in conformance with the findings and order of the Administrative Hearing Officer dated April 20, 1995.

MONTGOMERY, J., and SHRUM, P.J., concur.